REXFORD v. BRUNSWICK–BALKE–COLLENDER CO.

(Circuit Court of Appeals, Fourth Circuit.   July 13, 1910.)

No. 946.

1. INSANE PERSONS (§ 70*)—PROBATE—JURISDICTION—ESTATES OF INSANE PERSONS.

Battle's Revisal, N. C. 1873, c. 57, § 7, provides that whenever it shall appear to the probate court that a sale of any part of a lunatic's real estate is necessary for his maintenance, or for the discharge of debts unavoidably incurred for his maintenance, or it appears that the interest of the lunatic would be promoted by the sale of any part of such estate, the court may order a sale, and the proceeds shall descend and be distributed in like manner as provided for the sale of infants' estates, etc. *Held* that, the probate court having jurisdiction of a petition for the allotment of a maintenance for a lunatic and his family, to discharge debts unavoidably incurred for that purpose, and to direct sales of real estate to provide a fund therefor, and also to make provision for the care and preservation of the lunatic's estate, it was not ousted of jurisdiction because the guardian's petition also prayed for a sale to provide for the payment of pre-existing debts.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 70.*

Probate jurisdiction, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

2. COURTS (§ 1*)—"JURISDICTION."

"Jurisdiction" is the power to hear and determine a cause.  It is coram judice whenever a case is presented which brings this power into action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 4, pp. 3876–3885; vol. 8, pp. 7697–7698.]

3. JUDGMENT (§ 28*)—VALIDITY—JURISDICTION.

Where a proceeding embraces two causes of action, one within the court's jurisdiction and the other not, and the court enters judgment affecting both causes, the judgment is valid to the extent that it deals with the subject-matter within the court's jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 39; Dec. Dig. § 28.*]

4. EVIDENCE (§ 82*)—PRESUMPTIONS—COURT PROCEEDINGS.

Where a court had jurisdiction of the parties and subject-matter, it will be presumed that the subsequent proceedings were regular until the contrary is shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 104; Dec. Dig. § 82.*]

5. JUDGMENT (§ 501*)—COLLATERAL ATTACK.

Where a court had jurisdiction of the parties and subject-matter, its judgment could not be attacked collaterally for errors or irregularities in subsequent proceedings except for fraud.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 941; Dec. Dig. § 501.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INSANE PERSONS (§ 71*)—SALES IN PROBATE.

Sales of real property of a lunatic in proceedings before the proper probate judge or clerk of the superior court of North Carolina acting as a probate court are judicial sales.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 118–124; Dec. Dig. § 71.*

For other definitions, see Words and Phrases, vol. 4, pp. 3867–3870.]

7. INSANE PERSONS (§ 71*)—SALE OF LAND—TITLE OF PURCHASER—PROCEEDINGS—IRREGULARITIES.

A purchaser of real property at a sale held by a lunatic's commissioner under a probate order is not chargeable with errors or irregularities in the proceedings; it being sufficient if the court had jurisdiction of the parties and subject-matter, that the commissioner acted under a decree purporting to confer power of sale.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 71.*]

8. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASERS—NOTICE—DEEDS.

Under the North Carolina law, the record of a deed is notice to a subsequent purchaser from the same grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513–539; Dec. Dig. § 231.*]

9. VENDOR AND PURCHASER (§ 229*)—BONA FIDE PURCHASER—NOTICE.

Any facts sufficient to put a purchaser of land on inquiry is adequate notice, not only of such fact, but of anything to which such inquiry may lead.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 229.*]

10. JUDGMENT (§ 668*)—SALE OF REAL ESTATE—IMPEACHMENT—ESTOPPEL.

During the life of a lunatic, a commissioner was appointed and authorized to sell his real estate for maintenance and preservation, etc. He sold the timber in controversy on certain of the lunatic's land, and, after the lunatic's death, the commissioner's account was settled in the proceeding and transferred from the probate to the superior court of the state, to, which all the lunatic's heirs were made parties. *Held*, that such heirs were concluded by the judgment confirming the commissioner's report, to which no exceptions were taken, and that they were thereafter estopped to impeach the title of the purchasers from the commissioner.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181–1183, 1188, 1189; Dec. Dig. § 668.*]

11. LIS PENDENS (§ 24*)—PURCHASERS PENDENTE LITE.

The commissioner of an insane person under a probate decree sold the timber in controversy on certain of the lunatic's land in a proceeding in which the probate court had jurisdiction, and thereafter, the lunatic having died and the proceeding having been transferred to the superior court of the state and all of the lunatic's heirs having been made parties, the commissioner's report including the sale of the timber was considered and confirmed; no exceptions having been taken to the report. *Held*, that a purchaser of the land on which the timber was located from the heirs during the pendency of such proceeding was bound by the decree, and could not therefore impeach the title of the timber purchasers.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 38–46; Dec. Dig. § 24.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Pep'r Indexes

Action by C. H. Rexford against the Brunswick-Balke-Collender Company. Judgment for defendant, and plaintiff appeals. Affirmed.

This action was brought originally in the superior court of Swain county, N. C., to the July term, 1908, of said court. Upon due proceedings had, the case was removed for trial to the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

In his complaint filed in the state court the plaintiff seeks to have declared null and void certain deeds executed by John W. Terrell, commissioner, to sell the lands of William H. Thomas, a lunatic, which deeds are recorded in the counties of Swain and Graham, N. C., and under which the defendant claims title to certain trees and timber standing upon the land, of which plaintiff alleges he is the owner in fee simple. After the case was docketed in the Circuit Court, by leave of the court, the plaintiff changed the form of his action, and filed a bill in equity to remove a cloud from his title to the land in controversy. The bill sought, as did the complaint filed in the state court to have canceled certain deeds made by Terrell, commissioner, to J. F. Loomis and Xenaphon Wheeler, and from Loomis & Wheeler to W. C. Heyser, and from Heyser to the Brunswick-Balke-Collender Company, the present defendant, which deeds purport to convey a certain number of trees of a particular size growing and standing upon the lands claimed by complainant, and by the cancellation and annullment of these deeds it was sought to remove the alleged cloud upon his title to the land described. Heyser filed an answer disclaiming interest in the controversy, but the answer of the present defendant maintained the validity of the deeds under which it held its right to the trees conveyed thereby; and further averred that the trees were still standing upon the land, and had not been cut and removed.

In this situation the following order was made in the case on the 15th of April, 1909: "The above-entitled cause coming on to be heard on application of the complainant for the appointment of a special examiner to take testimony therein under equity rule 67, and it appearing to the court that the rights of the defendants in this action depends primarily on several questions of law based on documentary evidence of its title to the trees in question, and it further appearing to the court that it would facilitate the hearing of said cause, if such documentary evidence were offered and such preliminary question to the title first disposed of by the court. Now, therefore, it is ordered that these questions of law and the documentary evidence bearing thereon be first presented to the court for argument and all questions of fact in this cause be held in abeyance until said preliminary questions are disposed of by the court, and it is further ordered that this cause be and the same is set for hearing before the court on said questions on the 28th day of April, A. D. 1909, time 3 p. m. o'clock at Asheville, North Carolina. This order is made without prejudice to the rights of either party in case the court is of the opinion that it is necessary that further evidence be taken in said cause. April 15th, 1909. J. C. Pritchard, U. S. Circuit Judge."

Thereupon, without the intervention of a master, the court proceeded to take testimony, and on the 1st day of June, 1909, entered the following decree: "This cause came on the 28th day of April, 1909, to be heard and debated before the Honorable J. C. Pritchard, Circuit Judge of the United States for the Fourth Circuit, in the presence of counsel learned for plaintiff and defendant, the Brunswick-Balke-Collender Company, upon debate of the matter, and hearing what was alleged by counsel on both sides in relation to the issues raised by the pleadings touching the validity and construction of certain deeds of conveyance for certain timber trees: (1) A deed from James W. Terrell, commissioner, to J. F. Loomis and Xenophon Wheeler, dated the 3d day of August, 1883. (2) A deed from the said Terrell, commissioner, to the said Loomis & Wheeler, dated the 27th day of December, 1884. (3) A deed from said Terrell, commissioner, and T. H. Lester, B. D. Lester, and C. Y. Lester, of Swain county, North Carolina, to said Loomis & Wheeler, dated the 27th day of December, 1884. (4) A deed dated the 29th day of April, 1909, from the said Loomis & Wheeler, and their respective wives to

the defendant, W. C. Heyser.   (5) A deed from the said defendant, W. C. Heyser, and his wife, to the defendant, the Brunswick-Balke-Collender Company; the said deeds being the same as those mentioned in the third paragraph of the plaintiff's complaint herein and the first paragraph of his amended complaint herein.   This court ordered that the special case should stand for judgment, and the same standing for judgment in the presence of counsel for plaintiffs and defendants.   Upon reading the said deeds and hearing what was alleged by counsel on both sides in relation thereto, this court doth, as to the first of the questions submitted for the judgment of the court, declare that by virtue of the three first above-mentioned deeds under and through which the defendant, the Brunswick-Balke-Collender Company, claims title to the trees in question mentioned and described in said deed, the plaintiff admitting that he and the defendant company claim title from a common source of title, and that the plaintiff's deed under which he claims embraced the same lands as the said above three deeds under which the defendant company claims, and the same trees mentioned and described in said company's deed, the defendant, the Brunswick-Balke-Collender Company, under and by virtue of said three deeds first above mentioned and the said other deeds above mentioned, does take and hold an absolute and indefeasible title, in fee simple, in and to all of the trees mentioned and described in the said deeds and is the owner in fee simple of said trees, and by virtue of the provisions of said deeds, the said defendant, the Brunswick-Balke-Collender Company, its successors and assigns, have the right to enter upon the lands upon which the said trees are situated and upon any other lands belonging to the estate of the said William H. Thomas, at the date of the said three deeds first above mentioned, for the purpose of cutting and removing said trees, and have the right of ingress and egress over the same and the right to make such roads over any of said lands suitable and proper to enable them to remove said trees whenever they may so desire.   And this court doth, as to the second of the said questions, declare that under and by virtue of the provisions of the said deeds the defendant, the Brunswick-Balke-Collender Company, its successors and assigns, are not bound by any provisions contained in said deed or otherwise, to cut and remove the said trees from the said lands within a reasonable time.   And this court, as to the said first and second questions, doth order, adjudge and decree accordingly.   And this cause is retained for further orders.   This the 1st day of June, 1909.   J. C. Pritchard, U. S. Circuit Judge."

From this decree the complainant appealed to this court.

Tucker & Lee, Adams & Adams, Frye & Raby, and Julius C. Martin (Martin & Wright, on the brief), for appellant.

Merrimon & Merrimon (Bryson & Black, on the brief), for appellee.

Before GOFF, Circuit Judge, BOYD and DAYTON, District Judges.

BOYD, District Judge (after stating the facts as above).   There are many assignments of error on the part of the appellant set out in the record, but the whole case as presented to us in our opinion turns upon the effect to be given to the three deeds referred to in the decree, one dated August 3, 1883, and the other two December 27, 1884, in which J. W. Terrell, as commissioner appointed by the probate court of Jackson county, conveyed to J. F. Loomis and Xenophon Wheeler certain trees therein described upon the lands of William H. Thomas, Sr., in the counties of Graham and Swain, N. C.   The timber rights conveyed in the said deeds are those now claimed by defendant by deeds subsequently made by Loomis & Wheeler to W. C. Heyser, and by Heyser to the defendant.   If the original deeds from Terrell to Loomis & Wheeler are, for any reason, invalid, it is admitted that the

claim of the defendant under the deeds subsequently made constitutes a cloud upon appellant's title; otherwise, not.

The several points involved rest chiefly upon certain proceedings had in the probate court of Jackson county, N. C., before the clerk of the superior court, and the superior court of said county, and, in order to an intelligent understanding of the case, it will be necessary in the course of our discussion to give the character and substance of these proceedings, and, as near as possible, the order in which they took place. William H. Thomas, Sr., was a resident of Jackson county, N. C. He was a man of extensive business affairs and the owner of considerable property, consisting principally, however, of large tracts of wild unimproved lands, upon much of which there was valuable timber in the counties of Jackson, Cherokee, Graham, Swain, and elsewhere, in the western part of the state.

Before the inquisition hereafter referred to in which the said Thomas was adjudged a lunatic, he was largely indebted to various persons, and certain of his creditors had reduced their claims against him to judgment in the state courts, and besides William Johnson and R. B. Johnson had obtained judgment against him in the Circuit Court of the United States for the Western District of North Carolina for about the sum of $34,000. Whilst these conditions were existing, the mind of Thomas became impaired, and upon due proceedings had before the probate court of Jackson county on the 15th of May, 1877, he was adjudged a lunatic, and on the 5th of April, 1878, W. L. Hilliard was duly appointed and qualified as his guardian. In May, 1880, Hilliard, as guardian, filed his petition in the probate court of Jackson county by which he sought to provide a maintenance for the lunatic, and for his family, also to raise funds for expenses necessarily incident to important litigation pending in regard to lands of the lunatic, and to pay taxes, and further in the petition he asked for an adjustment and settlement of certain judgments which had been taken against Thomas before he was declared insane, and for the payment of his debts. It was also stated in the petition that the lunatic had no personal estate of any value. Acting on the petition, the probate judge made certain findings of fact in regard to the matters set out, and among them that the amount necessary for a maintenance for the lunatic and his family was $1,000 a year, and also that there had already accrued for the support of the lunatic and his family, and for necessary expenses incident to litigation attending his estate, and taxes, the sum of $2,450. Thereupon the order of the court was that there be set apart for the support of the lunatic and his family, and other expenses necessarily incident to the estate, the sum of $2,200 each for two years, $1,900 each for the two succeeding years, and $1,600 for the next year.

Proceeding further in the ascertainment of facts, the probate court found that the estate of the lunatic was indebted; that Johnson and Johnson had recovered a judgment against him in the Circuit Court of the United States for the Western District of North Carolina for about $34,000, and that there were judgments docketed against him in the state courts aggregating about $16,000; further, that the Johnson judgment was a lien on about 40,000 acres of unimproved land located

in the counties mentioned, which land was worth from 50 cents to $2 an acre; that the larger and more valuable tracts of land belonging to said Thomas were involved in serious litigation, requiring large amounts of money for costs, fees, attention, etc.; that William H. Thomas, Jr., of full age, James R. Thomas, age 19, and Sallie L. Thomas, age 17, were the children and presumptive heirs at law, and next of kin of the lunatic, and that the two minor children were a part of his family. Thereupon, on the 26th of May, 1880, the probate court entered a decree in response to the prayer of the guardian's petition by which James W. Terrell was appointed commissioner to make sale of lands belonging to the lunatic's estate, being directed to sell first such as were not subject to the lien of the Johnson judgment recovered in the Circuit Court of the United States, as before stated. The commissioner was empowered to sell lands at private sale for one-fourth cash, and the balance in equal installments in one and two years, and he was also required to report semiannually to the court of sales made, to whom sold, the particular tract sold, date of sale, and amount received. Terrell proceeded as commissioner to discharge the duties imposed upon him by decree of the probate court, and on the 1st of April, 1885, he made his report in which, among other realty, was included the sales of trees in 1883 and 1884 to Loomis & Wheeler, and which were conveyed to them by the deeds in question, and this report was confirmed by the clerk of the superior court of Jackson county.

As will be seen, the proceedings by the guardian were commenced in the probate court of Jackson county, and the findings of fact and the decree appointing Terrell commissioner with authority to sell the lands made by that court in 1880, but that the report of the commissioner was made to the clerk of the superior court of Jackson county, and confirmed by that officer in 1885. This is due to the fact that in the meantime the laws of North Carolina with respect to probate courts, and the clerks of the superior courts, had been changed. The law as it existed when the proceedings began will be found in Battle's Revisal. We quote the following from chapter 90:

"The clerks of the superior courts are declared judges of probate in their respective counties." (Section 1.)

And, as relating to the jurisdiction of the probate court at the time, we copy section 7, c. 57, of said Revisal:

"Whenever it shall appear to the court of probate, upon the petition of the guardian of any idiot or lunatic, that a sale of any part of his real or personal estate is necessary for his maintenance, or for the discharge of debts unavoidably incurred for his maintenance; or, whenever the court shall be satisfied that the interest of the idiot or lunatic would be materially and essentially promoted by the sale of any part of such estate, or whenever any part of his real estate is required for public purposes, the court may order a sale thereof to be made by such person, in such a way and on such terms as it shall adjudge; provided, however, that the court, if it be deemed proper, may direct to be made parties to such petition the next of kin or presumptive heirs of such nonsane person. And if on the hearing, the court shall order such sale, the same shall be made and the proceeds applied and secured, shall descend and be distributed, in like manner as is provided for the sale of infants' estates, decreed in like cases to be sold on application of their guardians, as directed in the chapter entitled 'Guardian and Ward.' "

The probate courts, by that name, were abolished by the North Carolina Legislature as will be seen by reference to the Code of North Carolina adopted in 1883 (volume 1, § 102), which is in this language:

"The office or place of probate judge is abolished, and the duties heretofore pertaining to clerks of the superior courts as judges of probate, shall be performed by the clerks of the superior courts as clerks of said courts, and all matters pending before said judges of probate shall be deemed transferred to the clerks of the superior court."

And, further, section 7, copied above, was re-enacted verbatim as section 1675 of the Code of 1883, and the same jurisdiction with respect to lunatics and their estates was thereby conferred on the clerks of the superior courts.

The appellant insists that under the circumstances detailed the probate court had no jurisdiction to entertain the guardian's petition, or to order sales of the lunatic's property, and that, therefore, the proceedings had in that court were void, and the deeds to Loomis & Wheeler by virtue thereof are invalid. This is the first question for our consideration.

In the case of Blake v. Respass, 77 N. C. 193, the Supreme Court of the state of North Carolina held that:

"The statute (Battle's Revisal, c. 57) confers no power upon the courts of probate to provide for the payment of the debts of a lunatic contracted prior to the lunacy."

If, therefore, the petition of the guardian had been solely to provide for the payment of pre-existing debts, except such as were unavoidably incurred for the maintenance of the lunatic, there would have been no jurisdiction in the court to entertain the petition, or respond to its prayers by ordering sales of the lunatic's property, and that would be an end of this case, but as we see it the provision for the payment of debts of the lunatic was a secondary object of the petition, the prime purpose being to provide for a maintenance for the lunatic and his family, for debts theretofore unavoidably incurred for support, and also for current expenses incident to the care and preservation of his estate. By the averments in the petition it is made to appear that the lunatic's property was incumbered, was in litigation, and that the income therefrom had not been sufficient to meet the expenses incident to his support, and it is specifically stated:

"That there is yet due and owing on account of the support of the said lunatic and the maintenance and support of said infant children and costs accruing in litigation in the protection of said lunatic's property the sum of $2,000."

And among the first prayers of the petition are the following:

"That an account may be taken to inquire and ascertain of what the estate of the said W. H. Thomas consisted at the inquisition of the said lunacy.

"Of what the said estate does now consist.

"That a proper sum may be appropriated and settled for the maintenance and support of the said lunatic, for indebtedness already incurred, and for the support and maintenance for the future.

"And that a proper sum may be settled and approved for the maintenance and support of the said infant children, in the future, as well as the indebtedness of the past, and that the said sum so reported as necessary for the maintenance and support of the said lunatic may be paid to his guardian out

of the estate of the said lunatic, and that the sum so settled and approved for the support and maintenance of the said infant children be paid to the guardian of said children out of said lunatic's estate."

Undoubtedly the probate court had jurisdiction of a petition for the allotment of a maintenance for a lunatic and his family, to discharge debts unavoidably incurred for this purpose, and to direct sales of property to these ends, and, further, we think that a proper construction of the statute vested the power in the probate court to make necessary and suitable provisions for the care and preservation of the lunatic's estate.

In our research, we find no North Carolina case to the effect that the probate court had no jurisdiction over the estate of a lunatic further than to provide for maintenance. The decisions have only gone to the extent that the probate court was not authorized to provide for the payment of debts of a lunatic contracted prior to the lunacy; that this jurisdiction remained in the superior court where it had always been. In section 7 of chapter 57, Battle's Revisal, copied above, it will be found that the probate court, upon the petition of the guardian of a lunatic, had the jurisdiction to direct the sales of real or personal estate of the lunatic for four purposes: First, for the necessary maintenance; second, for the discharge of debts unavoidably incurred for maintenance; third, whenever the court shall be satisfied that the interest of the lunatic would be materially and essentially promoted by the sale of any part of his estate; and, fourth, whenever any part of his real estate was required for public purposes. The probate court found as a fact that the most valuable real estate of the lunatic was in litigation, and that there were necessary costs and expenses attending this litigation which involved the recovery and preservation of the property, also that taxes were accruing upon the lands, and that the lands did not yield enough income to pay such taxes.

We are, therefore, led to inquire the meaning of the statute wherein it says that the court shall have power to order the sale of any part of the real or personal estate of a lunatic whenever the court shall be satisfied that the interest of the lunatic would be materially and essentially promoted thereby. In view of this provision, will it be contended that the court having both the person and the estate of a lunatic legally in its custody is to sit idly by and see such estate subjected to loss or swept away by litigation for the want of jurisdiction to take steps for its preservation? To give the statute a construction leading to such result would to our minds be subversive of legislative intent, and would expose the estate of a lunatic in custodia legis to loss, and perhaps entire sacrifice without power in the court having it in charge to protect it.

We conclude, therefore, that the allegations of the petition of the guardian were sufficient to confer jurisdiction upon the probate court to ascertain the necessary maintenance for the lunatic and his family to be allotted out of his estate, to provide for debts theretofore unavoidably incurred for such maintenance and also to make such orders and decrees as were necessary to preserve the estate, or to save it from loss or dissipation pending the lunacy, and the fact that in the petition

the guardian went further and asked for sales of property of the lunatic to relieve liens, and to pay pre-existing debts, did not oust the jurisdiction of the probate court to proceed with the cause for the purposes contemplated by section 7, c. 57, above quoted, and to the extent authorized by the law. "The power to hear and determine a cause is jurisdiction. It is 'coram judice,' whenever a case is presented which brings this power into action. If the petitioner states such a case in this petition that on a demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction." United States, Appellant, v. Arredondo et al., Appellees, 6 Pet. (31 U. S.) 681 (see page 708) 8 L. Ed. 547.

We lay it down as a further proposition of law that where a proceeding embraces two causes of action, the one of which is within the jurisdiction of the court in which the same is brought, and the other without, and the court enters judgment or decree affecting both causes, such judgment or decree is valid to the extent that it deals with the subject-matter within the jurisdiction. "If, however, the court has jurisdiction of the action and the parties, and is competent to give part of the relief granted, its judgment so far as within its powers is valid." 1 Freeman on Judgments (4th Ed.) § 120, p. 184. This doctrine is upheld in Abernathy v. Railroad, 150 N. C. 97, 63 S. E. 180. In that case a proceeding was brought before the clerk of the superior court of Mitchell county by the plaintiff against the railroad company under the North Carolina statute for the purpose of finding and recovering compensation for the right of way over his land occupied and appropriated by the defendant for railroad purposes. In the petition the plaintiff joined two causes of action—the one for compensation, and the other for damages. The Supreme Court held that a motion to dismiss on this ground could not be sustained, that the clerk had jurisdiction by reason of the fact that the petition sought compensation for the lands taken, and that the other cause of action was irrelevant and did not affect the jurisdiction.

It being determined that the probate court had jurisdiction of the parties, and of the subject-matter, the presumption that subsequent proceedings were regular will be indulged until the contrary is shown, and we find nothing in the record evidence (and there was no testimony aliunde) sufficient to warrant the conclusion that the probate court, when through its arm, the commissioner, made the sales to Loomis & Wheeler, was not acting within the limits of its authority. If the probate court, as we have stated, had been without jurisdiction of the parties and the subject-matter, its decree would be void, and no title could pass to a purchaser thereunder, but, when the jurisdiction attached, the case was coram judice, and errors or irregularities in subsequent proceedings cannot be availed of by collateral attack in another court. This proposition is so well settled that it is scarcely necessary to cite authorities, but we will call attention to Thompson v. Tolmie, 2. Pet. (27 U. S.) 156, 7 L. Ed. 381, in which the Supreme Court says:

"The jurisdiction of the court (under whose order the sale was made) over the subject-matter appears upon the face of the proceedings; and its errors or mistakes, if any were committed, cannot be corrected or examined when brought up collaterally as they were in the Circuit Court."

We find also that in the case of Comstock v. Crawford, 3 Wall. (70 U. S.) 396, 18 L. Ed. 34, in which the court was treating of the action of a probate court in a proceeding to sell land by an administrator, it is held:

"But, when by the presentation of a case within the statute the jurisdiction of the court has once attached, the regularities or irregularities of subsequent steps can only be questioned in some direct mode as prescribed by law. They are not matters for which the decree of the court can be collaterally assailed."

And to the same effect is the decision in the case of McNitt v. Turner, 16 Wall. (83 U. S.) 353 (21 L. Ed. 341):

"Where jurisdiction has attached, whatever errors may occur subsequently in its exercise, the proceedings being coram judice, cannot be impeached collaterally except for fraud."

A more recent case of Davis v. Gaines, 104 U. S. 386, 26 L. Ed. 757, treats generally of this subject, and reaffirms the decisions we have cited above, and refers to a number of leading authorities in support of the principle. Among the earlier cases in which the principle is decided is Elliott v. Peirsol, 1 Pet. (26 U. S.) 328, 7 L. Ed. 164, in which the court holds that:

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise its judgment, until reversed, is regarded as binding in every other court."

However, if after the jurisdiction attached there were irregularities in the course of the cause, or if the court acted in excess of its powers, what, if any, effect would such proceedings have upon the rights of a purchaser at a sale directed by the court's decree? The probate judge was, by the laws of North Carolina, a court as is also the clerk of the superior court who succeeded to the jurisdiction, and sales under orders or decrees of either were judicial sales. In Thompson v. Tolmie, supra, Mr. Justice Thompson in delivering the opinion of the court cited with approval Perkins v. Fairfield, 11 Mass. 227, in which it was held:

"That a title under sale by administrators by virtue of a license from the court of common pleas was good against the heirs of the intestate, although the license was granted upon the certificate of a judge of probates, not authorized by the circumstances of the case. The court said the license was granted by a court having jurisdiction of the subject. If that jurisdiction was improvidently exercised, or in a manner not warranted by the evidence before the probate court, yet it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court, as an authority emanating from a competent jurisdiction."

And in McNitt v. Turner, supra, the court says that:

"A purchaser at a judicial sale by an administrator does not depend upon a return by the administrator making the sale of what has been done. If preliminary proceedings are correct, and he has order of sale and the deed, this is sufficient for him."

And in this same case, Mr. Justice Swayne, after discussing the points involved in the case, which related to a proceeding by an administrator in the state of Illinois to sell lands of a decedent for assets, and deciding that although there were irregularities the court which ordered the sale had jurisdiction, and laying down the rule which we

have before referred to that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, cannot be impeached collaterally save for fraud, proceeds further to say that the order of sale before the court was within the rule, and then quotes from Grignon's Lessee v. Astor et al., 2 How. 341 (11 L. Ed. 283), the following:

".The purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of its jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; and so where an appeal is given, but not taken, in the time allowed by law.' This case and the case of Voorhees v. Bank of the United States, 10 Pet. 449 [9 L. Ed. 490], are the leading authorities in this court upon the subject. Other and later cases have followed and been controlled by them. Stow v. Kimball, 28 Ill. 93, affirms the same doctrine."

And again in Gaines v. Davis, supra, the law as laid down in Thompson v. Tolmie is reiterated in the following language:

"The law appears to be settled in the states that courts will go far to sustain bona fide titles acquired under sales made by statutes regulating sales made by order of the orphans' courts. When there has been a fair sale the purchaser will not be bound to look beyond the decree, if the facts necessary to give the court jurisdiction appear on the face of the proceedings."

And the court goes further in the case of Gaines v. Davis to say that:

"It is sufficient for the buyer to know that the court had jurisdiction and exercised it, and that the order on the face of which the purchase was made authorized the sale."

The next question inviting our attention is that of notice. The appellant derives his title to the lands in question under a deed executed by the heirs of W. H. Thomas, deceased, lunatic, to J. S. Bailey dated April 18, 1903, and a deed from Bailey and wife to appellant dated the 26th of September, 1906. The deed from Terrell, commissioner, to Loomis & Wheeler, conveying timber on the lands in Swain county, was duly recorded in that county on the 31st of August, 1883, and the two deeds for timber on the lands in Graham county placed on record in that county on the 31st of December, 1884.

It is well settled in North Carolina that this recordation of the Loomis & Wheeler deeds was notice to Bailey at the time he purchased, for the decisions of the Supreme Court of the state are uniform to the effect that, where an instrument affecting the title to real estate is properly recorded, the record thereof is notice to a subsequent purchaser from the same grantor. The citation of a few of the many North Carolina cases declaring this to be the law will be sufficient. In Taylor v. Eatman, 92 N. C. reprint 563, it is held that:

"Registration of a prior voluntary deed is notice to a subsequent purchaser."

And in Austin v. Staten, 126 N. C. 783, 36 S. E. 338, it is held in substance that registration of a deed under the laws of North Carolina is required for the purpose of notice to a subsequent purchaser. The record discloses the fact that the description of the lands upon which

the timbers conveyed to Loomis & Wheeler were standing was fully set out in the recorded deeds. This constituted notice to all the world of what the deeds contained, and Bailey's purchase after the registration charged him with such notice. And it is an established proposition that any fact which is sufficient to put a purchaser of land on inquiry is adequate notice, and of everything to which such inquiry may lead. Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286; Thompson and Wife et al. v. Blair et al., 7 N. C. 583, 3 Murphey's Law & Equity. If our reasoning is well grounded, and it seems to us that it is, the conclusion follows that the probate court had jurisdiction to make the decree directing Terrell as commissioner to sell property of the lunatic; that Loomis & Wheeler bought and took title by virtue of this decree; that rights thus vested cannot be attacked collaterally in a proceeding inter alios acta; and that Bailey bought in 1903 the lands upon which the timber conveyed to Loomis & Wheeler is located with notice of their title, and subject to their said rights.

We might, therefore, stop here and affirm the decree of the Circuit Court, and we would do so, but there is a further view of the case presented in the record, and argued by counsel, which we think it would be well to consider. This view is based upon proceedings had before the clerk of the superior court of Jackson county, and in the superior court of said county, subsequent to the dates which have been hereinbefore recited. The proceeding in the name of Hilliard, as guardian, continued before the clerk, and was pending on the 25th of October, 1889, when Hilliard resigned as guardian, and James R. Thomas (a son of the lunatic), who had become of age in the meantime, succeeded to the guardianship of his father. On the day of his appointment Thomas filed his petition as guardian before the clerk, in which he sought to make sales of the real estate of the lunatic for purposes set out in his petition, and also to collect the purchase money for sales made by Terrell and convey to the purchasers, etc. The lunatic died intestate in June, 1893, and James R. Thomas, the son, became administrator upon the intestate's estate. Before that the lunatic's daughter, Sallie L. Thomas, had intermarried with A. C. Avery, and William H. Thomas, Jr., a son of the lunatic had died, leaving him surviving as his only heirs at law, Sallie Thomas, William Thomas, Love Thomas, De Witt Thomas, Bryan Thomas, and Mary Thomas, all infants and for whom James R. Thomas became guardian.

On the 9th of January, 1899, a petition was filed before the clerk of the superior court of Jackson county in the name of James R. Thomas, A. C. Avery and wife, Sallie L. Avery, and James R. Thomas, as administrator of the estate of William H. Thomas, Sr., deceased, of full age, and Sallie Thomas, William Thomas, Love Thomas, De Witt Thomas, Bryan Thomas, and Mary Thomas, by their guardian, James R. Thomas. In this petition the several petitioners as the only heirs at law and next of kin of the deceased lunatic sought to have the proceeding instituted by Hilliard, and that instituted by Thomas, as guardians, consolidated, and to have themselves made parties plaintiff in the consolidated case. And the petition went further to allege that Terrell had been appointed commissioner to sell lands and convey the same to purchasers as provided in the order of the probate judge of Jackson

county; that he had sold a number of tracts of land and had collected the purchase money, and had also sold and cut timber for which he had not accounted. The petitioners prayed that the sales, receipts, disbursements, and liabilities of Terrell, as commissioner, and the account of James R. Thomas of sales of land, of disbursements of the proceeds of such sales by him as guardian of said Thomas, and as commissioner, be referred to a competent accountant to examine and report to the court after notice to the parties interested. Upon the petition, the clerk of the superior court of Jackson county on the 6th day of July, 1899, entered an order consolidating the two proceedings, also confirming sales made by James R. Thomas, as guardian, and directing him to make title for land sold by Terrell before the qualification of said Thomas as guardian upon the collection of the purchase money. On the 8th of September, 1899, the counsel for the petitioners and for Terrell filed an agreement in the case before the clerk, in which appears the following:

"It is further agreed that this special proceeding, entitled as above, shall be entered upon the docket of the superior court of Jackson county at the Fall term, 1899, thereof, to be then further proceeded with according to law, and for all purposes."

The clerk entered his order on the same date transmitting the entire case to the superior court, and it was docketed for the Fall term, 1899. After the case was so docketed, the superior court appointed M. W. Bell and Thomas A. Jones to take and state an account of the transactions of Terrell, as commissioner, and also to report to the court upon the issues and questions of fact and of law raised by the pleadings in the case. In discharge of their duties the said referees took an account of the dealings of Terrell, as commissioner, including the sales of land and timber, his collections and disbursements in connection with the estate of the lunatic. They made a report at length of the findings of fact and conclusions of law to the court on the 26th of February, 1905. They found as a fact that there was a small balance due Terrell from the estate, and among their conclusions of law they submitted these two:

"That this proceeding was properly begun in the probate court of Jackson county by virtue of chapter 57 of Battle's Revisal, and that the clerk of the superior court of said county by operation of law and statute in such case made and provided succeeded to the functions which the probate judge had theretofore exercised and had."

"We conclude as a matter of law that said Terrell had a right to sell the timber on the Graham and Swain county lands with the approval of the clerk of the superior court, and that the order of said clerk protects him in the sales made to Loomis & Wheeler."

There were no exceptions to this report, and at the October term, 1905, of the court, judgment was entered confirming the same in all particulars. All parties acquiesced in this judgment, and the same was therefore final.

We think that aside from being concluded by this judgment the heirs at law of the lunatic when they voluntarily made themselves parties to the proceeding in which the timber was sold to Loomis & Wheeler, and sought to hold Terrell to an account for the purchase

money, and recover the same from him if he was still liable therefor, thereby ratified the sales, and were estopped to impeach the title of the purchasers.

The remaining question is as to the effect of the final judgment of the superior court upon the rights of Bailey, who purchased and took deed from the heirs at law of Thomas, who were parties to the proceeding. Bailey bought in 1903 whilst the case was still pending in the superior court. The jurisdiction of the superior court in the case transmitted by the clerk and of all matters in controversy therein is settled, we think, by a statute of North Carolina, and decisions of the Supreme Court of that state construing it. The statute we refer to is chapter 276, Pub. Laws N. C. 1887, from which we quote:

"That, whenever any civil action or special proceeding begun before a clerk of any superior court shall be for any ground whatever sent to the superior court before the judge, the said judge shall have jurisdiction; and it shall be the duty of said judge upon the request of either party to proceed to hear and determine all matters in controversy in such action."

Referring to this statute in Oldham v. Rieger, 145 N. C. 254, 58 S. E. 1091, the Supreme Court says:

"That, whenever a cause which was originally brought before the clerk is constituted in the superior court at term by transfer, appeal, or in any other way, the court shall proceed to hear and determine all matters in controversy."

And in Re Anderson, 132 N. C. 243, 43 S. E. 649, treating of this same statute, the court declares:

"Whenever any civil action or special proceeding begun before a clerk of the superior court shall be for any ground whatever sent to the superior court, the said court shall have jurisdiction, although the proceedings originally had before the clerk were a nullity."

And in Railroad v. Stroud, 132 N. C. 413, 43 S. E. 913, it is held that a case on appeal to the judge from the clerk is as fully before the judge as if it had originally been returned before him. We cite, also, Smith v. Pipkin, 79 N. C. 569, reprint, 510, in which it is held that the superior courts have concurrent jurisdiction with the courts of probate over lunatics and their estates.

Were the timber rights of Loomis & Wheeler on the Thomas lands called in question in the superior court, or the title derived to them by the deeds from Terrell involved in the controversy? It plainly appears that the Superior Court took cognizance of these questions. The referees found, as shown by the quotations from the report, that the probate court and the clerk had jurisdiction, and, further, that Terrell had the right to sell the timber to Loomis & Wheeler. These were legal conclusions which were confirmed by the judgment of the court, and it is not our province to assume that the court exercised jurisdiction over matters not before it. The Supreme Court of North Carolina in Dancy v. Duncan, 96 N. C. reprint 98, decided:

"If property is transferred by the defendant pending a suit involving its title, in which there is afterwards a judgment for the plaintiff, the judgment relates to the beginning of the action, and binds the property in the hands of the purchaser."

See, also, Rollins v. Henry, 78 N. C. reprint 297.

And again, in Bird v. Gilliam, 125 N. C. 76, 34 S. E. 196, the court held that:

"A purchaser of land in litigation is conclusively fixed with notice, and takes his conveyance from a party to the suit subject to the final adjudication."

These decisions, both of which were rendered before the conveyance to Bailey was executed, established a rule of property in North Carolina, which we cannot disregard in passing upon property rights in that state. The appellant who bought from Bailey in 1906 took by his deed only such right as Bailey could convey, which, we are led to conclude, was the title to the lands in question subject to the timber rights under the deeds from Terrell to Loomis & Wheeler.

The decree of the Circuit Court is affirmed, and the cause remanded to the end that further proceedings may be had in harmony with this decision.

Affirmed.