### STONEBRAKER-ZEA CATTLE CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    January 4, 1915.)

Nos. 4129, 4130, 4131.

1. PUBLIC LANDS ⬅120 — CANCELLATION OF PATENTS — EVIDENCE — BONA FIDE PURCHASER.

In suits by the government to cancel patents to homesteads and conveyances by the patentees to the defendant corporation, evidence *held* to show that the corporation had knowledge of facts sufficient to put it upon inquiry as to its grantors' compliance with the homestead laws, so that it was not a bona fide purchaser.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⬅120.]

2. PUBLIC LANDS ⬅120—CANCELLATION OF PATENTS—BURDEN OF PROOF— BONA FIDE PURCHASER.

One defending a suit to cancel government patents on the ground that it was a bona fide purchaser has the burden of proving absence of notice of the defects.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⬅120.]

Appeals from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Three separate suits by the United States against the Stonebraker-Zea Cattle Company. Decrees for the United States in each case, and the defendant appeals. Affirmed.

H. B. Martin, of Tulsa, Okl. (A. F. Moss, of Tulsa, Okl., on the brief), for appellant.

T. G. Chambers, Jr., Asst. U. S. Atty., of Oklahoma City, Okl. (Isaac D. Taylor, U. S. Atty., of Guthrie, Okl., on the brief), for the United States.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

T. C. MUNGER, District Judge. The United States brought three actions against a corporation known as the Stonebraker-Zea Cattle Company, seeking to cancel patents issued to homestead claimants and deeds made by such claimants to the company. The decrees granted the relief prayed for in each case, and the company has appealed. As the issues and the proofs are substantially the same, the cases may be considered together. The bills filed by the government alleged fraud in the making of the applications to enter, and in the making and procuring of final proof statements, by the young women who sought to obtain the land. There is no claim by the appellant that the proofs were not sufficient to show clearly that there was no such settlement, residence, and cultivation by the entrywomen as was required by the land laws of the United States relating to homesteads, but the appellant's defense rests upon the claim of a bona fide purchase of the land. The conveyances were made to appellant soon after the receiver's receipts had been issued to the homestead claimants, and before patent, and a fair price was paid for the land, and the only real issue in the case is whether the corporation had notice at the time of purchase of the infirmities of the entrywomen's title.

[1] The president of the company conducted the negotiations for the purchase of the lands, received the deeds, and paid the consideration. The appellant corporation was formed by three men, who have, at all times, held all the capital stock, and have been the officers and directors who managed its affairs; but one of the stockholders, who acted as secretary, held but a nominal interest, and had little active participation in the conduct of the business. The corporation owned a stock ranch of about 15,000 acres of land, extending for 25 miles along a river in Oklahoma, where it pastured about 6,000 head of cattle and 400 head of horses. A ranch foreman resided upon the ranch and was in charge of the actual operations there. The president and secretary resided at Kansas City, Mo., and the vice president appears to have resided at some distance from the ranch. The president's duties included the purchase of real estate, payment of taxes, and caring for the finances, and it was the vice president's duty to supervise the conduct of the ranch operations relating to the stock. Both the president and vice president were frequently at the ranch. The three young women who made the homestead entries came to the ranch together in the fall of 1904, and lived at the ranch house for a week or 10 days, and then removed to a house which was so placed as to bestride the boundary

line between two of their homesteads. This house was removed after the arrival of the young women, and early in November, 1914, by employés of the company, from the company's ranch land, to this place, by directions of the ranch foreman, and he paid the men who moved it with the company's checks. Later a house was built upon the homestead claimed by the other of the young women, an employé of the company devoting 36 days of time to the performance of this work, for which he was also paid by the company's check, given him by the foreman. Less than a month's residence on these claims was maintained in the autumn of 1904, but the entrywomen returned in the following April or May and remained in the vicinity until the making of final proof in August, 1905. Provisions were furnished them from the company's supply at the ranch house, and water was hauled to them from the company wells and by its employés. The homesteads were in a part of the public domain which the company had been using for the purpose of grazing its cattle, and where it had placed wells and windmills to furnish a supply of water for them, and prior to this time it had purchased 25 to 50 other homesteads in this vicinity. Two of the homesteads were about a mile from the ranch house, and the other was about 2 miles distant.

The president of the company testifies that when he purchased the land he knew of no failure by the entrywomen to comply with the homestead laws. Referring to the furnishing of the house and supplies from the ranch, he limited his testimony to a denial of the authority of the foreman to sell them, and of report of their sale. Neither the vice president, the ranch foreman, nor the entrywomen were produced as witnesses.

[2] The defense of a bona fide purchase includes the concept of a lack of notice and the burden of pleading and of proof of this absence of notice rests upon the one making such a defense. 2 Pom. Eq. Jur. § 785; Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Smith v. Orton, 131 U. S. lxxv, appx., 18 L. Ed. 62; Balfour v. Hopkins, 93 Fed. 564, 35 C. C. A. 445; United States v. Lewis I. Brannan, 217 Fed. 849, 133 C. C. A. 559, Oct. 31, 1914, Circuit Court of Appeals, 5th Circuit.

The facts already stated and others not necessary to detail, demonstrate that the appellant, at and before the time the conveyances were made to it, was not without notice of facts which should have incited a person of reasonable prudence to an inquiry, and this inquiry would have disclosed the fraudulent character of the entries. Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286; Houston Oil Co. of Texas v. Wilhelm, 182 Fed. 474, 104 C. C. A. 618; Reed v. Munn, 148 Fed. 737, 80 C. C. A. 215; Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 99; Rexford v. Brunswick-Balke-Collender Co., 181 Fed. 462, 104 C. C. A. 210.

The decrees of the lower court are affirmed.