# UNITED STATES *v.* MINOR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE. DISTRICT OF CALIFORNIA.

Submitted January 26, 1885.—Decided March 30, 1885.

The United States has the same remedy in a court of equity to set aside or annul a patent for land, on the ground of fraud in procuring its issue, which an individual would have in regard to his own deed procured under similar circumstances.

The doctrine of the conclusiveness of judgments and decrees of courts, as between those who are parties to the litigation, is not applicable to the United States, in regard to the proceedings before the land officers in granting patents for the public land.

Though it has been said very truly in some cases that the officers of the Land Department exercise functions in their nature judicial, this has reference to cases in which individuals have, as between each other, contested the right to a patent before those officers, whose decision as to the facts before them is held to be conclusive between those parties.

But fraud or imposition on those officers, or a radical mistake by them of the law governing the disposition of the public lands, has always been held to be subject to remedy in a court of equity; and where there has been no contest, and the claimant produces without opposition his *ex parte* proofs of performance of the necessary conditions; it is especially needful that equity should give the government a remedy if those proofs are founded in fraud and perjury.

This was an appeal from a decree of the Circuit Court for the District of California, dismissing the bill of the United States on demurrer.

The object of the bill was to set aside and annul a patent issued by the United States to Minor, on January 5, 1876, for the northwest quarter of Section 18, Township 6, North Range 2, East of the Humboldt Meridian. The bill as originally filed made in substance the following allegations:

That said Minor, on the 23d day of October, 1874, filed the declaratory statement in the land office necessary to give him a right of pre-emption to the land, alleging that he had made a settlement on it March 20th of that year; and on June 20, 1875, he made the usual affidavit that he had so settled on the land in March of the previous year, that he had improved it, built a house on it, and continued to reside on it from the time of said settlement, and had cultivated about one acre of it. He also made affidavit, as the law required, that he had not so settled upon and improved the land with any agreement or contract with any person by which the title he might acquire would enure to the benefit of the latter. He also made oath that he was not the owner of 320 acres of land in any State or Territory in the United States. These affidavits being received by the register and receiver as true, he paid the money necessary to perfect his right, received of them the usual certificate,

called a patent certificate, on which there was issued to him at the General Land Office in due time the patent which is now assailed.

The bill then charged that all these statements, made under oath before the land officers, were false and fraudulent. That defendant had never made the settlement, nor cultivation, nor improvements mentioned; that he had never resided on the land, but during all the time had lived and had his home in a village about twelve miles distant; and that he had not made these proofs of settlement to appropriate the land to his own use, but with intent to sell the same to some person unknown to the plaintiff.

It was also charged that defendant produced, in corroboration of his own statement, the affidavit of a witness, one Joseph Ohuitt, who testified to the settlement, improvement and residence of defendant, all of which was false and fraudulent. It was then alleged that by these false affidavits the land officers, supposing them to be true, were deceived and misled into allowing said pre-emption claim and issuing said patent, to the great injury of the United States.

A demurrer to this bill having been sustained, plaintiff was allowed to file an amendment, by which it was set out that one Richard Spence entered upon the west half of the quarter-section in question on the first day of April, 1872, with the intention of pre-empting the same as soon as the lands were surveyed and open to pre-emption, and that on the 22d day of October, 1874, the approved plat of said surveys was duly filed in the land office at Humboldt, and on the 3d day of December thereafter Spence made his declaratory statement for the west half of that quarter-section and the west half of the southwest quarter of the same section. It was further alleged that Spence, having complied with the terms authorizing his pre-emption by actual residence, improvement and cultivation, and having commuted his pre-emption right for a homestead right, and perfected his cultivation and improvement by a five years' residence, and paid the fees of the officers, made application on the 5th day of April, 1880, for his patent, to which he was legally entitled, but it was found that Minor's patent covered

half his claim, to wit, the west half of the northwest quarter of the section.

The title having passed from the United States to Minor for the entire quarter section, no patent could be issued to Spence, who was equitably entitled to a part of it.

To this bill, as amended, the Circuit Court again sustained a demurrer and dismissed it, and from that decree this appeal was taken.

The circuit and district judges certified a division of opinion on eight propositions of law, which they believed to arise out of this demurrer, as follows:

I. Whether the frauds and perjury alleged in the bill as the equitable grounds for vacating the patent in question are frauds extrinsic and collateral to the matter tried and determined in the land office upon which the patent issued, and constitute such frauds as entitle the complainant to relief in a court of equity?

II. Whether perjury and false testimony in a proceeding before the land office, such as alleged in the said amended bill, by means of which a patent to a portion of the public land is fraudulently and wrongfully secured, is such a fraud as will require a court of equity to vacate the patent on that ground alone?

III. Whether the decision and determination of the questions involved on false and perjured testimony, as set forth in the said amended bill, and the issue of a patent thereon, are not conclusive as against the United States on a bill filed to vacate the patent so issued?

IV. When the United States files a bill to vacate a patent, on the ground that it was fraudulently obtained upon false testimony, as alleged in said amended bill, whether it is necessary to offer in the bill to return the purchase money paid for the land by the patentee?

V. Whether a court of equity will enforce the penalties and forfeitures imposed by § 2262 of the Revised Statutes of the United States, for obtaining a patent to land upon false affidavits?

VI. Whether the remedy at law provided by said section

and an indictment for perjury are not the only remedies for the wrong alleged in the amended bill?

VII. The bill of complaint having been originally filed in this case on June 19, 1883, more than seven years and five months after the issue of the patent, whether the claim to vacate the patent on the ground of fraud is stale, and whether the bill ought to be dismissed on that ground?

VIII. Whether the demurrer to the said amended bill should be sustained?

*Mr. Solicitor-General* for appellant.

*Mr. L. D. Latimer* for appellee.—I. The first three questions can be considered together. The decision of the officers of the Land Department was a judicial decision, upon the testimony before them, and is conclusive between the parties. *Warren* v. *Van Brunt*, 19 Wall. 646, 652; *Shepley* v. *Cowan*, 91 U. S. 330; *Marquez* v. *Frisbie*, 101 U. S. 473, 476; *Moore* v. *Robbins*, 96 U. S. 530, 533; *Quinby* v. *Conlan*, 104 U. S. 420, 425; *Vance* v. *Burbank*, 101 U. S. 514, 519. The particular acts of fraud charged in the bill are not such as will authorize a court of equity to set aside or disturb the judgment and decision of the land officers in holding that the defendant pre-emptor had proven himself to be entitled to the land, and awarding and issuing to him a patent therefor. *Smelting Co.* v. *Kemp*, 104 U. S. 636, 640; *United States* v. *Throckmorton*, 98 U. S. 61, 66; *Vance* v. *Burbank*, 101 U. S. 514, 519. In the cases in which actions have been maintained to set aside patents, it was clear that the land officers had no jurisdiction, and upon that ground only the actions were sustained.—II. As to the fourth question it seems too plain for argument that no one can have rescission without placing the other party *in statu quo.*—III. As to the fifth and sixth questions, courts of equity have no jurisdiction of matters of forfeiture unless specially conferred by statute. *Stevens* v. *Cady*, 2 Curtis, 200; § 2262 Rev. Stat. does not confer it.—IV. As to the seventh question, we say the bill comes too late, and the claim is stale. *Badger* v. *Badger*, 7 Wall. 87, 94; *Stearns* v. *Page*, 9 How. 819.

Mr. JUSTICE MILLER delivered the opinion of the court. After stating the facts in the foregoing language, he continued:

As regards the last of these questions, it does not present any such well-defined point of law as can be certified to this court for an answer. It merely presents the whole case without showing a distinct point in regard to which the judges were opposed in opinion. *United States* v. *Waddell*, 112 U. S. 76. But, as it must be answered by the action of the court in affirming or reversing the decree, this is immaterial.

With regard to the fourth, fifth and sixth questions, we have no difficulty in holding that neither the provisions of § 2262 Rev. Stat., nor the liability to indictment, nor the actual indictment and conviction of the defrauding party for perjury in such case as this, in any manner supersedes or debars the United States of the remedy by bill in chancery to vacate the patent obtained by such fraudulent practices. On the contrary, the provision of the section above mentioned, that the person who makes the false oath in the premises shall forfeit any money he may have paid for the land, answers in the negative the fourth question, namely, is the United States bound to offer in the bill, in a case like this, to return the purchase-money? The statute declares it is forfeited, and, though the party may lose the land, he also loses his money as a penalty of his perjury.

The seventh question, with regard to laches in bringing the suit, we answer by saying, that in the present case there is no such laches shown as will justify the court in dismissing the bill. Waiving for the present the general proposition that time does not run against the government, from the effect of which we see no escape in the short period of seven years and a half, it is pretty clear, on the face of the bill, that the first discovery of the fraud was made when Spence, on applying for his patent under the homestead law, made it known that he had been residing on, improving, and cultivating a part of the land included in Minor's patent during the time Minor swore he was doing the same thing. Of course, lapse of time, as a defence to a suit for relief for these frauds did not begin to run until the fraud was discovered.

The first three questions may be considered together. If an individual or a corporation had been induced to part with the title to land, or any other property, by such a fraud as that set out in this bill, there would seem to be no difficulty in recovering it back by appropriate judicial proceedings. If it was a sale and conveyance of land induced by fraudulent misrepresentation of facts which had no existence, on which the grantor relied, and had a right to rely, and which were essential elements of the consideration, there would be no hesitation in a court of equity giving relief; and where the title remained in the possession of the fraudulent grantee, the court would surely annul the whole transaction, and require a reconveyance of the land to the grantor. The case presented to us by the bill is bne of unmitigated fraud and imposition, consummated by means of representations on which alone the sale was made, every one of which was false. The law and the rules governing these pre-emption sales required in every instance the settlement and residence for a given time on the land, the actual cultivation of a part of it, and building a house on it. It required that the claimant should do this with a purpose of acquiring real ownership for himself and not for another, nor with a purpose to sell to another.

In the case as presented by this bill none of these things were done, though the land officers were made to believe they were done by the false representations of the defendant. It was a case where all the requirements of the law were set at nought, evaded and defied by one stupendous falsehood, which included all the requirements on which the right to secure the land rested. There can be no question of the fraud and its misleading effects on the officers of the government, and, in a transaction between individuals, it makes a clear case for relief.

Is there anything in the circumstance that these misrepresentations were supported by perjury, that the defendant made oath to his falsehoods and procured a false affidavit of a witness to corroborate himself, which should deprive the injured party of relief? It would seem rather to add to the force of the reasons for such relief that fraud and falsehood were re-enforced by perjury.

Is there any reason to be found in the relation of the government to such a case as this which will deprive it of the same right to relief as an individual would have? On the contrary, there are reasons why the government in this class of cases should not be held to the same diligence in guarding against fraud as a private owner of real estate. The government owns millions and millions of acres of land, which are by law open to pre-emption, homestead, and public and private sale. The right and the title to these lands are to be obtained from the government only in accordance with fixed rules of law. For the more convenient management of the sale of these lands, and the establishment by individuals of the inchoate rights of pre-emption and homestead, and their final perfection in the issuing of a title, called a patent, there is established in each land district an office in which are two officers, and no more, called register and receiver. These districts often include twenty thousand square miles or more, in all parts of which the lands of the government subject to sale, pre-emption and homestead are found. These officers do not, they cannot, visit these lands. They have maps showing the location of the government lands and their subdivision into townships, sections and parts of sections, and, when a person desires to initiate a claim to any of them, he goes before them and makes the necessary statements, affidavits, and claims, of all which they make memoranda and copies, which are forwarded to the General Land Office at Washington.

For the truth of these statements they are compelled to rely on the oaths of the parties asserting claims, and such *ex parte* affidavits as they may produce.

In nine cases out of ten, perhaps in a much larger percentage, the proceedings are wholly *ex parte*. In the absence of any contesting claimant for a right to purchase or secure the land, the party applying has it all his own way. He makes his own statement, sworn to before those officers, and he produces affidavits. If these affidavits meet the requirements of the law, the claimant succeeds, and what is required is so well known that it is reduced to a formula. It is not possible for the officers of the government, except in a few rare instances,

to know anything of the truth or falsehood of these statements. In the cases where there is no contesting claimant there is no adversary proceeding whatever. The United States is passive; it opposes no resistance to the establishment of the claim, and makes no issue on the statement of the claimant.

When, therefore, he succeeds by misrepresentation, by fraudulent practices, aided by perjury; there would seem to be more reason why the United States, as the owner of land of which it has been defrauded by these means, should have remedy against that fraud—all the remedy which the courts can give —than in the case of a private owner of a few acres of land on whom a like fraud has been practised.

In a suit brought by the United States against Moffat to set aside a patent for land on the ground of fraud in procuring its issue, this court said: "It may be admitted, as stated by counsel, that if, upon any state of facts, the patent might have been lawfully issued, the court will presume, as against collateral attack, that the facts existed; but that presumption has no place in a suit by the United States directly assailing the patent and seeking its cancellation for fraud in the conduct of those officers." *Moffat v. United States*, 112 U. S. 24.

The principle is equally applicable when those officers, though wholly innocent, were imposed upon and deceived by the fraud and false swearing of the party to whom the patent was issued.

The learned judge whose opinion prevailed in the Circuit Court and is found in the record, has been misled by confounding the present case with that of *United States v. Throckmorton*, 98 U. S. 61, and *Vance v. Burbank*, 101 U. S. 514, and thus applying principles to this case which do not belong to it.

In Throckmorton's case, it is true, a part of the relief sought was to set aside a patent for land issued by the United States. But the patent was issued on the confirmation of a Mexican grant after proceedings prescribed by the act of Congress on that subject. These proceedings were judicial. They were commenced before a board of commissioners. There were pleadings and parties, and the claimant was plaintiff, and the United States was defendant. Both parties were represented by counsel, the United States having in all such cases her regular.

District Attorney to represent her. Witnesses were examined in the usual way, by depositions, subject to cross-examinations, and not by *ex parte* affidavits. From this tribunal there was a right of appeal to the District Court, and from that court to the Supreme Court of the United States by either party. There was nothing wanting to make such a proceeding, in the highest sense, a judicial one, and to give to its final judgment or decree all the respect, the verity, the conclusiveness, which belong to such a final decree between the parties. The patent could only issue on this final decree of confirmation of the Spanish or Mexican grant, and was, in effect, but the execution of that decree.

It was to such a case as this that the ruling in Throckmorton's case was applied. The court said in that case, which was a bill to set aside the decree of confirmation: "The genuineness and validity of the concession from Michelterona, produced by complainant, was the single question pending before the board of commissioners and the District Court for four years. It was the thing, and the only thing, that was controverted, and it was essential to the decree. To overrule the demurrer to this bill would be to retry, twenty years after the decision of those tribunals, the very matter which they tried, on the ground of fraud in the document on which the decree was made. If we can do this now, some other court may be called on twenty years hence to retry the same matter on another allegation of fraudulent combination in this suit to defeat the ends of justice; and so the number of suits would be without limit and litigation endless about the single question of the validity of this document."

It needs no other remarks than those we have already made, as to the nature of the proceeding before the land officers, to show how inappropriate this language is to such a proceeding. Here no one question was in issue. No issue at all was taken. No adversary proceeding was had. No contest was made. The officers, acting on such evidence as the claimant presented, were bound by it and by the law to issue a patent. They had no means of controverting its truth, and the government had no attorney to inquire into it. Surely the doctrine applicable to

the conclusive character of the solemn judgments of courts, with full jurisdiction over the parties, and the subject matter, made after appearance, pleadings and contests by parties on both sides, cannot be properly applied to the proceedings in the land office in such cases.

So, also, as regards the case of *Vance.* v. *Burbank,* 101 U. S. 514, the language of the court in regard to the conclusiveness of the decision of the land office must be considered with reference to the case before it.   That was not a case by the grantor, the United States, to set aside the patent, but by a party, or the heirs of a party, who had contested the right of the grantee before all the officers of the Land Department up to the Secretary of the Interior, and been defeated, and where the whole question depended on disputed facts, the evidence of which was submitted by the contestants to those officers.   In such a case, where there was full hearing, rehearing, and issues made and tried, the observation of the court, " that the decision of the proper officers of the department is in the nature of a judicial determination of the matter in dispute," is well founded.

. It has been often said by this court that the land officers are a special tribunal of a *quasi* judicial character, and their decision on the facts before them is conclusive.   And we are not now controverting the principle that where a contest between individuals, for the right to a patent for public lands, has been brought before these officers, and both parties have been represented and had a fair hearing, that *those parties* are concluded as to all the facts thus in issue by the decision of the officers.

But in proceedings like the present, wholly *ex parte,* no contest, no adversary proceedings, no reason to suspect fraud, but where the patent is the result of nothing but fraud and perjury, it is enough to hold that it conveys the legal title, and it would be going quite too far to say that it cannot be assailed by a proceeding in equity and set aside as void, if the fraud is proved and there are no innocent holders for value.   We have steadily held that, though in the absence of fraud the facts were concluded by the action of the Land Department, a misconstruction of the law, by which alone the successful party obtained a

patent, might be corrected in equity, much more when there was fraud and imposition.

If, by the case as made by the bill, Spence's claim had covered all the land patented to Minor, it would present the question, whether the United States could bring this suit for Spence's benefit. The government, in that case, would certainly have no interest in the land when recovered, as it must go to Spence without any further compensation. And it may become a grave question, in some future case of this character, how far the officers of the government can be permitted, when it has no interest in the property or in the subject of the litigation, to use its name to set aside its own patent, for which it has received full compensation, for the benefit of a rival claimant. The question, however, does not arise here, for half the land covered by the patent would revert to the United States if it was vacated, and, as between the United States and Minor it was one transaction evidenced by one muniment of title, the question does not arise; certainly not on demurrer to this bill.

The result of these considerations is, that the first and second questions are answered in the affirmative; the third, fourth, sixth and seventh in the negative; and the fifth is immaterial.

*The decree of the Circuit Court is reversed, and the case remanded for further proceedings not inconsistent with this opinion.*