## RAMSEY *v.* TACOMA LAND COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 138. Submitted January 17, 1905.—Decided January 30, 1905.

In a remedial statute such as § 5, act of March 3, 1887, 24 Stat. 557, enabling *bona fide* purchasers from railroad companies to perfect their titles by purchase from the Government in case the land purchased was not included in the grant the term "citizens," in the absence of anything to indicate the contrary, includes state corporations.

Whether a *bona fide* purchaser from a railroad company acts with reasonable promptness in availing of the provisions of the act of March 3, 1887, is a question primarily for the Land Department and one attempting to enter the land is charged with knowledge of the act, the railroad's title and, if the deeds have been properly recorded, of the claims of the railroad's grantee and subsequent assigns; and, under the circumstances of this case, this court will not set aside the decision of the Land Department allowing a *bona fide* purchaser to avail of the privilege of the act within ten months after the lands had been stricken from the company's list as the result of a decision affecting that and other lands rendered ten years after the purchase from the railroad company, and during which period all parties had considered the full equitable title to be in the railroad company and its grantees.

THIS was a suit commenced in the Superior Court of Pierce County, Washington, by the plaintiff in error, praying that she be decreed to be the owner of the S.W. ¼ of the N.W. ¼ of section 3, township 20 north, range 2 east, in said county, and that the defendants be adjudged to hold the legal title in trust for her. A decree of the trial court in her favor was reversed by the Supreme Court of the State, and the cause dismissed. 31 Washington, 351.

The essential facts, which are not disputed, are stated in the opinion of the Supreme Court. The land was within the primary limits of the grant to the Northern Pacific Railroad Company by joint resolution of Congress, of May 31, 1870. 16 Stat. 378. The company filed its map of general route on August 13, 1870, and its map of definite location on May 14, 1874. The Land Department thereupon withdrew from sale and entry this with other tracts. On May 19, 1869, one W. C. Kincade made a preëmption filing on the land, but had abandoned the filing and the land prior to the act of 1870. Subsequently to the filing of the map of definite location the tract was held by the company and considered by the Land Department to have passed to the company until the departmental decision of August 28, 1896, in *Corlis* v. *Railroad Company*, 23 L. D. 265 (on review 26 L. D. 652), which held that lands situated as this were excepted from the grant. In 1874 the railroad company, for value and in good faith, sold and conveyed the land to the Tacoma Land Company, a corporation created under the laws of Pennsylvania. Thereafter that company, for value and in good faith, sold to the other defendants, who also acted in good faith. The several deeds representing these transactions were placed on record in the county where the tract is situated. On October 13, 1896, the Commissioner of the General Land Office canceled the railroad company's list of the tract in question, on the basis of the decision in *Corlis* v. *Railroad Company*. On February 24, 1897, the plaintiff filed in the local land office her application to enter the land as a homestead, which filing was accepted by

the local officers, and in May of that year she went upon the land, and has there since remained, making improvements to the value of $1,200. In August, 1897, the land company filed its application to purchase the tract, under section 5 of the act of Congress of March 3, 1887. 24 Stat. 556. A contest between the plaintiff and the land company was had in the Department, which resulted in a decision in its favor, and to it a patent was issued.

.*Mr. John F. Shafroth, Mr. John C. Stallcup* and *Mr. J. W. A. Nichols* for plaintiff in error.

*Mr. Stanton Warburton* and *Mr. E. R. York* for defendants in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

Plaintiff in error presents but two questions which have not already been determined by this court. One is whether a state corporation is entitled to the benefit of section 5 of the act of 1887, which names as beneficiaries "citizens of the United States," or "persons who have declared their intentions to become such citizens." This can scarcely be considered a debatable question, for in *United States* v. *Northwestern Express Company*, 164 U. S. 686, similar language in the Indian Depredations Statute was adjudged broad enough to include a state corporation. No review of the authorities there considered and no restatement of the argument is necessary. Obviously, in a remedial statute like this, the term "citizens" is to be considered as including state corporations, unless there be something beyond the mere use of the word to indicate an intent on the part of Congress to exclude them. The other question arises on the contention of the plaintiff, that the statute of 1887 is not curative but simply permissive; that it does not attempt to confirm the title of the purchaser

from the railroad company, but simply gives him the privilege of purchasing from the Government at the ordinary price. It is urged that it cannot be presumed that Congress intended that the land should be held indefinitely waiting for the election of the purchaser, and that the privilege must be exercised at once or considered as abandoned. It is said that the land company did not attempt to exercise the privilege immediately after the passage of the act, but waited for more than ten years. Obviously the statute is not a curative one, confirms no title, but simply grants a privilege. We shall assume that that privilege is not one continuing indefinitely, that the land is not held free from entry until the purchaser from the railroad company has formally refused to purchase, and that he must act within a reasonable time. Nevertheless, we are of opinion that the action of the Land Department must be sustained. It is true that the land company did not proceed immediately after the passage of the act of 1887, but until 1896 both the railroad company and the Land Department assumed that the land was already the property of the land company by its purchase from the railroad company. While all parties considered the full equitable title as vested in the land company, there was no duty cast upon it of securing a further title by purchase from the Government. Only after the decision in the *Corlis* case in 1896, and on October 13 of that year, was the land stricken from the railroad company's list. Within ten months thereafter the land company made its application. Now, whether it acted with reasonable promptness was a question primarily for the consideration of the Land Department. That Department had before it the application of the plaintiff to enter the land under the general land laws, and that of the land company to purchase it under the act of 1887; and after a full consideration it decided in favor of the land company, a decision which, in effect, determined that the company had acted with all necessary promptness and was entitled to the benefit of the statute. Of course, the privilege granted by the statute would be of little or no avail if it had

to be exercised on the very day. Some time must be allowed for acquiring knowledge of the situation and determining the course of action. The plaintiff was as fully charged with knowledge of this act of 1887 as the land company. Upon the records of the county were the deeds from the railroad to the land company and from the latter to its grantees. So she acted with knowledge both of the law and the facts, and is not in a position now to complain of the action of the Land Department. We are not justified in setting aside the decision of the Land Department and holding that it erred in awarding to the land company the privilege which the statute, without any express limitation of time, gives to it.

We see no error in the record, and the judgment of the Supreme Court of Washington is

*Affirmed.*