## UNITED STATES v. KRUEGER.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1915.)

No. 4439.

PUBLIC LANDS ☞138—SUIT FOR CANCELLATION OF PATENT—FRAUDULENT EN-
TRY—BONA FIDE PURCHASER.

A tract of land was patented under an entry which was fraudulent, in that it was supported by false affidavits that the land was unoccupied, unimproved, and not claimed adversely, whereas in fact it was then and had been for many years occupied under a conveyance from a railroad company as land passing under a grant and was highly improved. The affidavits that the land was unoccupied were required by the rules of the department, and the acceptance of the entry was based thereon. While under the later rulings of the Land Department the land did not pass under the grant because of a then subsisting valid pre-emption thereon, subsequently abandoned, the occupant under the deed from the railroad company was given by Act March 3, 1887, c. 376, § 5, 24 Stat. 557 (Comp. St. 1913, § 4899), a preferred right to purchase the same at the government price, but he was not notified and given an opportunity to exercise such right on the holding that the land did not pass under the grant, as required by the rules of the department, because of the false affidavits that there was no adverse claim. *Held*, that defendant, who purchased the land under the entry, was not protected as a bona fide purchaser, but was charged by the adverse occupancy, and the recorded conveyances under which it was held, with notice of the fraudulent character of the entry, and that the United States was entitled to a cancellation of the patent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 368; Dec. Dig. ☞138.

Cancellation of patent to public lands, see note to Hartman v. Warren, 22 C. C. A. 38.]

Appeal from the District Court of the United States for the District of Colorado; John A. Riner, Judge.

Suit in equity by the United States against Emma T. Krueger. Decree for defendant, and complainant appeals. Reversed.

J. I. Hollingsworth, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, U. S. Atty., of Boulder, Colo., and E. B. Lacy, Asst. U. S. Atty., of Denver, Colo., on the brief).

William V. Hodges, of Denver, Colo. (L. J. Williams, of Denver, Colo., on the brief), for appellee.

Before CARLAND, Circuit Judge, and AMIDON and VAN VAL-
KENBURGH, District Judges.

CARLAND, Circuit Judge. This is an action by the United States to cancel for fraud a patent for the west half of the northeast quarter, section 17, township 5 north, range 69 west, Larimer county, Colo., issued June 6, 1910, to William E. Moses. Appellee had judgment below, and appellant appeals.

The following facts appear from the record:

On September 2, 1909, one William E. Moses filed in the local land office at Denver, Colo., an application to enter the land above

described by the use of soldiers' additional homestead scrip. In said application the applicant stated that he was not acquainted with the character of the land, but that the same was unoccupied and unimproved by any person claiming the same other than himself. The application was accompanied by the nonmineral affidavit of one John A. McIntyre, who in said affidavit made oath that he was well acquainted with the character of the land, and that it was not in any manner occupied adversely to the selector. Moses made the application to enter the land at the request of one Charles M. Krueger to whom Moses had sold the soldiers' additional scrip on which the land was entered for $780. Moses never had any interest in the land and conveyed the same to Krueger April 15, 1910.

On April 22, 1910, Charles M. Krueger conveyed an undivided one-half interest in the land to Emma T. Krueger, his wife, the defendant herein, and the other undivided one-half interest to Mary N. McIntyre, the sister of Emma T. Krueger and wife of John A. McIntyre, who made the nonmineral affidavit at the time the land was entered. On April 22, 1913, Mary N. McIntyre conveyed her undivided one-half interest in the land to said Emma T. Krueger. Other conveyances affecting this land are as follows:

April 5, 1871, John Evans, trustee for the Denver Pacific Railway & Telegraph Company, conveyed the land to James Langston. By mesne conveyances the apparent title to the land vested in Perry C. Benson on April 6, 1904. Benson paid $1,375 cash for the land. When Benson acquired the same about five acres thereof had been cultivated. There was a fence around all of the land except a small portion on the mountain side. Benson began improving the land as soon as he bought it, by getting the timber off and grading down the ridges. He constructed ditches and headgates for the irrigation of the land at an expense of $35 to $50 an acre. He moved the house and barn from one portion of the land to a more desirable portion at quite an expense. He built an implement shed, barn, henhouse, cave, and cistern. These improvements were all completed before September 2, 1909. All the improved land has been cultivated since Benson owned it, sometimes by himself, and at other times by renters. The land was all under irrigation prior to 1909, aside from a few high places. There was a house on the land when Benson bought it. The occupants vacated when he took possession; another man moved in as his tenant. The house on the land was occupied in 1907 and 1908. All the improvements were on the land in 1909 and are still there. Emma T. Krueger, the defendant, brought suit to eject Benson from the land which suit is still pending. On or about August 3, 1907, Benson received from Charles M. Krueger the following letter:

"August 3, 1907.

"Mr. P. C. Benson, Loveland, Colorado—Dear Sir: Upon a search of the records, I find that you are the present owner of the W. ½ N. E. ¼, Sec. 17, Tp. 5 N., R. 69 west of the 6th P. M., and that the title thereto is imperfect. If you are sufficiently interested, I would be pleased to correspond with you relative to the matter and assist you in curing the defect. My charges will be reasonable. As to who I am, I would refer you to Messrs. Foote, Riner, Bartholf, James and others of your city.

"Respectfully,          Chas. M. Krueger."

Benson has paid the taxes upon the land ever since he bought it. The people living in the house on the land had beds, tables, chairs, and what a person not of the wealthy class ordinarily would have. Benson testified he saw such things in the house. He conversed with the people in the house during 1904, 1905, 1906, 1907, 1908, and 1910. When he bought the land in 1904 the agent of the company from which he bought the land was living there. At the trial it was stipulated as follows:

"By act of Congress of July 2, 1862 (12 Stat. 489), Congress granted to the Leavenworth, Pawnee & Western Railroad Company, a right of way over certain public lands, and also certain public lands to aid in the construction of said railroad. That under and by virtue of a certain act of Congress of March 3, 1869, the Denver Pacific Railway & Telegraph Company became the owner of and entitled to all the rights and benefits so granted and conferred by said act of Congress of July 2, 1862, and said company selected and definitely located its said right of way on August 20, 1869, and so selected and definitely located and fixed its said right of way as to bring the lands involved in this suit within the primary limits of said grant. On April 13, 1866, Robert W. Woodward filed a certain valid pre-emption declaratory statement, numbered 2091, as provided for in the act of Congress dated September 4, 1841 (5 Stat. 455), for the lands hereinabove described (unoffered lands), upon which final proof and payment was never made. That said declaratory statement was a valid and subsisting claim on August 20, 1869, and all rights under and by virtue of said pre-emption filing of said Woodward expired by operation of law on July 14, 1872, up to which date said filing was a valid and subsisting filing."

The defendant Emma T. Krueger testified that she paid Charles M. Krueger, her husband, $800 for an undivided one-half interest in the land; that she paid Mary N. McIntyre $1,500 for the other undivided one-half interest; that the $1,500 was paid by check dated April 22, 1913. The defendant also testified that at the time of making these payments she had no knowledge of the facts or circumstances connected with the application to enter the land; that the first time she saw this land was on March 27, 1913. The witness testified that she did not think it was necessary to send any one to look at the land before she bought it. The $400 paid her husband was in cash. John A. McIntyre testified that Charles M. Krueger was his attorney and acted for him in the matter of entering the land. There was other testimony given at the trial which it is not necessary to here produce. We are satisfied from an examination of all the evidence that the land was in the open and notorious possession of Benson at the time Moses applied to enter the same with soldiers' additional scrip; that the statement in the application and the nonmineral affidavit that the land was unoccupied, and not in the adverse possession of any person other than the selector, was false, to the knowledge of the persons applying to enter the land. We are of the opinion, therefore, that the patent should be set aside for the fraud committed against the United States, unless the defendant has shown that she is an innocent purchaser without notice of the fraud. United States v. Iron & Silver Mining Co., 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571; United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110.

No actual notice of the fraud has been shown, but counsel for the United States insist that the defendant had constructive notice by

reason of the possession and occupancy of Benson, and the record of the chain of title from the Denver Pacific Railway & Telegraph Company to Benson, as the same appeared in the office of the county clerk and recorder of Larimer county, Colo., at the time she purchased an undivided interest from her husband, and also at the time she purchased the other undivided interest from Mrs. McIntyre. The claim of counsel for the United States may be stated in this way: By act of Congress of July 2, 1862 (12 Stat. 489), Congress granted to the Leavenworth, Pawnee & Western Railroad Company, a right of way over certain public lands, and also certain public lands to aid in the construction of said railroad. By act of Congress of March 3, 1869, the Denver Pacific Railway & Telegraph Company became the owner of and entitled to all the rights and benefits so granted and conferred by said act of Congress of July 2, 1862, and said last-named company selected and definitely located its right of way on August 20, 1869, and so selected and definitely located and fixed its said right of way so as to bring the land involved in this litigation within the primary limits of the grant.

On April 13, 1866, Robert W. Woodward filed a valid pre-emption declaratory statement No. 2094, as provided for in the act of Congress, dated September 4, 1841 (5 Stat. 455), for the land involved in this suit, upon which final proof and payment was never made, that said declaratory statement was a valid and subsisting claim on August 20, 1869, and remained so until up to July 14, 1872. The pendency on August 20, 1869, of this pre-emption filing of Woodward prevented title to said land from vesting in the railroad company on that date. Kansas Pac. Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122. Prior to this decision the Land Department in construing the grant of July 2, 1862, and other like grants had held that under circumstances similar to the case at bar title to such land vested in the railroad company immediately upon the cancellation or failure of such filing. Wagstaff v. Collins, 97 Fed. 3, 38 C. C. A. 19; United States v. Winona, etc., R. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789. It is claimed that relying upon this land office practice the beneficiaries under the grant, namely the Denver Pacific Railway & Telegraph Company, sold the land in suit to one James Langston on April 5, 1871, and by subsequent conveyances the apparent title was vested in one Perry C. Benson as hereinbefore stated. By section 5 of the act of Congress of March 3, 1887 (24 Stat. 556), it is provided as follows:

"That where any said company shall have sold to citizens of the United States, * * * as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns."

It is claimed that under and by virtue of said section 5 Benson, the last holder of the title derived from the railroad company, had

the right to purchase the land in question from the United States at the ordinary government price, on learning that his title from the railroad had failed, and that he could not know this until the Land Department had determined that the land had been excepted from the operation of the grant. The third paragraph of rule 8 of the regulations of the Land Department for carrying into effect section 5 of the act of March 3, 1887, reads as follows:

"No entry will be allowed under this section until it shall have been finally determined by this department that the land was excepted from the grant." Act March 3, 1887; 8 Land Dec. Dept. Int. 348; Miller v. Tacoma Land Co., 29 Land Dec. Dept. Int. 633.

The Commissioner of the General Land Office did not determine that the land in suit was excepted from the operation of the grant of July 2, 1862, and March 3, 1869, until April 8, 1910, when he decided that Moses was entitled to enter the land under his application of September 2, 1909. Until said date Benson had a right to assume that the land was his by virtue of his purchase from the railroad company. This being so, there was no duty cast upon him to secure a further title by purchase from the government. Ramsey v. Tacoma Land Co., 196 U. S. 360, 25 Sup. Ct. 286, 49 L. Ed. 513; Miller v. Tacoma Land Co., 29 Land Dec. Dept. Int. 633. The Land Department had no means of knowing that any one was occupying or claiming the land in suit under a deed from the railroad company or otherwise, unless and until such facts should be brought to its attention. To cover such situations the rules and regulations of the Land Department in force at the time Krueger caused to be filed in the land office the application of Moses required such applicant to make a showing as to whether or not any one was occupying the land applied for or claiming the same adversely to the selector. 36 Land Dec. Dept. Int. 278. And the Land Department had a right to rely upon the applicant for this information. Leonard v. Lennox, 181 Fed. 761, 104 C. C. A. 296; United States v. Minor, 114 U. S. 238, 5 Sup. Ct. 836, 29 L. Ed. 110. Therefore, if the application of Moses to enter the land had stated that Benson was in possession or occupied the land, Benson would have been given notice of the application and he would have had the right to purchase the same under section 5 of the act of March 3, 1887. Miller v. Tacoma Land Co., 29 Land Dec. Dept. Int. 633; Fox v. Petrun, decision by the Secretary March 12, 1914. It is further claimed that defendant was chargeable with the notice of the Act of March 3, 1887. Gertgens v. O'Connor, 191 U. S. 237, 24 Sup. Ct. 94, 48 L. Ed. 163; Ramsey v. Tacoma Land Co., 196 U. S. 360, 25 Sup. Ct. 286, 49 L. Ed. 513.

It is now claimed that if the defendant, before taking title to the land in suit and paying therefor, had inquired of Benson or his tenants, she would have learned the fact that Benson claimed the land under a chain of title from the railroad company. Following up this information, as it is claimed she was bound to do, she would have learned the basis of the railroad company's claimed title—the grant of July 2, 1862, and the amendment thereto. She would have thereby come to a knowledge of the fact that Benson was not a trespasser

upon the land, but that under the terms of section 5 of the act of March 3, 1887, he was lawfully entitled to retain possession of such land until it should have been determined by the Land Department that title thereto had not passed to the railroad company, and that, upon the determination by the Land Department that the title to this land had not vested in the railroad company, Benson would have had under the terms of said section 5 a preferential right to purchase the land from the government. Gertgens v. O'Connor, supra. It is claimed she would have further learned that the patent under which she was taking title had been issued without Benson being notified of the failure of his claimed title, and that in the application upon which such patent was based, and in the affidavit which accompanied and supported it, it had been represented and stated that the land in question was at the date of such application not occupied adversely to the selector, and that it was unoccupied, unimproved, and unappropriated by any one other than the selector. This she would have already learned was contrary to the real facts. It is claimed that by reason of Benson's adverse possession defendant is chargeable with knowledge of all the facts above stated, and therefore is chargeable with a knowledge of the fraud upon the government perpetrated by Krueger through Moses in the acquirement of the patent. Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; 2 Pomeroy's Equity Juris. § 615; Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Tate v. Pensacola G. L. & D. Co., 37 Fla. 439, 20 South. 542, 53 Am. St. Rep. 251; Beattie v. Crewdson, 124 Cal. 577, 57 Pac. 463.

Of course, if the defendant can be charged with notice with all the facts above stated, including the regulations of the Land Department and the decisions thereof construing section 5 of the act of March 3, 1887, she could not be held to be an innocent purchaser. The difficult question in this case, however, is to determine how far Mrs. Krueger was obliged to travel into the transactions of the Land Department in her investigation of the title which she was about to purchase. In the consideration of this question we must not lose sight of the fact that Benson is not before the court asserting any right to the land in controversy. He has no controversy with the defendant Krueger in this action. The action is not brought by Benson, and on the face of the pleadings nothing appears that it is brought in his behalf. The facts hereinbefore stated as constituting the claim of counsel for the United States were not introduced in evidence for the purpose of showing that Benson had any right to relief in this action, but for the sole purpose of showing that the defendant Krueger had constructive notice of the fraud committed by her husband and his associates upon the government when they entered the land. Consequently it is not necessary to determine whether the rights of Benson as set up and claimed in this action are valid or not. The question to be decided upon this branch of the case is simply how far the occupancy of the land by Benson and the record of his chain of title would be constructive notice on the part of the defendant Krueger of the fraud committed in the entry of the land. She would, of course, by the possession and occupancy of Benson

and the record of his title, be chargeable with constructive notice of all of Benson's rights, whether she knew of his possession and occupancy as a matter of fact or not. But Benson is not asserting any right to the land in this action, and so his rights, whatever they are, are immaterial to the decision of this case.

Let us concede that the defendant Krueger must be charged with constructive notice of all of Benson's rights as claimed by counsel for the United States. Can she by reason of that fact be charged with constructive notice that a regulation of the Land Department required proof that the land was unoccupied at the time of making entry thereof, and that Moses and McIntyre had sworn falsely before the land office at the time the land was entered. In Wood v. Carpenter, supra, the rule is stated as follows:

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. * * * The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it."

If the contest here was simply between the defendant, Krueger, and Benson, it would not be difficult to determine the question. The defendant would be held to have had constructive notice of Benson's rights, but the difficulty arises when we come to use the occupancy of Benson, who is not here claiming any interest in the land, as a fact to charge Mrs. Krueger with the knowledge of the fraud in obtaining the patent. Although the question is not entirely clear, we are of the opinion that as the burden of proof rests upon the defendant to make out the defense of innocent purchaser (Boone v. Chiles, 10 Pet. 177–212, 9 L. Ed. 388; Wright-Blodgett Co. v. United States, 236 U. S. 397–405, 35 Sup. Ct. 339, 59 L. Ed. 637; Stonebraker-Zea Cattle Co. v. United States, 220 Fed. 99, 135 C. C. A. 96), Mrs. Krueger at the time she purchased must be held to have had constructive notice of facts which, if investigated, would have led to a knowledge of the fraud.

The decree below is reversed, and the case remanded, with instruction to enter a decree as prayed by the United States.