UNITED STATES v. KIRK.

(Circuit Court of Appeals, Eighth Circuit. December 31, 1917.)

Nos. 4975–4978.

1. PUBLIC LANDS ⟨key⟩120—SUITS TO CANCEL PATENTS—DEFENSE OF BONA FIDE PURCHASER.

In a suit by the United States to cancel a patent to public lands, the burden of pleading and proving the defense of bona fide purchaser is upon the defendants.

2. MINES AND MINERALS ⟨key⟩35—COAL LANDS—SUITS TO CANCEL PATENTS—BONA FIDE PURCHASERS.

Where defendants were members of an association, the purpose of which was to acquire coal lands of the United States in excess of the amount authorized by law, or paid their money for such lands with knowledge of facts which, if investigated, would have led to a knowledge of the fraudulent character of the entries, the defense of bona fide purchaser is not open.

3. MINES AND MINERALS ⟨key⟩45—COAL LANDS—PATENTS—CANCELLATION—EVIDENCE.

Evidence *held* to show that entries on which patents were based were made pursuant to a scheme to enable individuals or an association to obtain coal lands in excess of the amount authorized by law.

4. MINES AND MINERALS ⟨key⟩11—COAL LANDS—PATENTS—CANCELLATION.

Under Rev. St. §§ 2347–2351 (Comp. St. 1916, §§ 4659–4663), imposing restrictions in regard to filing on public coal lands, and forbidding more than one entry by the same person or association of persons, entries cannot lawfully be made in the interest of persons or associations who have exercised their own right of entry, and patents based on entries by persons who had not exercised their pre-emption rights pursuant to a scheme to enable a person or association to obtain lands in excess of the amount allowed are fraudulent and subject to cancellation.

5. MINES AND MINERALS ⟨key⟩42—COAL LANDS—PATENTS—SUITS FOR CANCELLATION—CONSIDERATION OF PATENT.

In determining the validity of patents to coal lands, where it appeared that the entries were all made in pursuance of a scheme by an association of persons to obtain more lands than allowed by law, the validity of the several patents cannot be determined apart from the general scheme.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suits by the United States of America against Lillian Kirk, against Eugene A. Austin and others, against Eugene Wilder and others, and against De Witt C. Bryant. The several suits being dismissed, the United States appeals; the causes being consolidated on appeal. Reversed and remanded.

Eugene B. Lacy, Asst. U. S. Atty., of Los Angeles, Cal. (Harry B. Tedrow, U. S. Atty., of Boulder, Colo., on the brief), for the United States.

George L. Hodges, of Denver, Colo. (D. Edgar Wilson, of Denver, Colo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CARLAND, Circuit Judge. The above-entitled actions were commenced by the United States for the purpose of having canceled for fraud certain land patents conveying coal land in Routt county, Colo. After a hearing on pleadings and proofs the actions were dismissed, and the United States appealed. The appeals have been submitted upon one brief and argument on both sides.

Case No. 4975 involves a coal land entry made April 11, 1903, in the name of W. L. Beach for which patent issued July 23, 1903, conveying 155.75 acres. The entryman by quitclaim deed conveyed the land to appellee on April 13, 1903. The complaint in this case as amended alleged that on or about March 21, 1902, appellee unlawfully and fraudulently entered into a combination and conspiracy with Frank V. Kirk, W. L. Beach, Henry Stevens, Eugene Wilder, Addison F. Orr, and Walter H. Nichols for the purpose of fraudulently purchasing and entering the land described in the above land patent in the name of and ostensibly for Beach, but in reality for appellee and her associates, in order to cheat and defraud the United States out of said land, and thereby procure for said appellee and her associates more than 160 acres of coal land in violation of the statutes of the United States in such case made and provided and in violation of the rules and regulations issued by the Commissioner of the General Land Office, relating to the entry and purchase of public vacant coal land; that in order to effect the object of said conspiracy appellee and her said associates caused and procured Beach to prepare, sign, and file with the register and receiver of the United States land office at Glenwood Springs, Colo., ostensibly for himself, but in reality for appellee and her said associates, all the necessary and proper applications, affidavits, proofs, and papers required by law or regulation to be signed and filed to obtain title from the United States to the vacant public coal land described in the above patent; that the coal "declaratory statement" filed by Beach was false in this, that it was not the intention of declarant to purchase said coal land for himself, but for appellee and her associates, and it was not true that said declarant had taken possession of any of said land, or had expended money upon any mine thereon; that the "affidavit at purchase" filed by Beach was false in this, that it was not true that he had expended any money in developing a coal mine upon said land; that it was not true that he had ever been in the actual possession of a coal mine on said land; that it was not true that he had made said coal land entry for his own use and benefit, and not directly or indirectly for the use or benefit of any other person; that in the purchase of said coal land Beach used the money of appellee to purchase the same for the sole use and benefit of appellee and her associates in order that she or they might make more than one coal cash entry of coal land; that at the time of said conspiracy, and the entry of said land by Beach, appellee and Frank V. Kirk, her husband, were and had been for many years prior thereto disqualified to enter or purchase either directly or indirectly public coal lands for the reason that they had exercised and exhausted all their rights so to do under the law; that at the time of the entry of said land by Beach appellee and her husband, Frank V. Kirk, were members of an association of persons who were seeking to

acquire a greater quantity of public coal land than lawfully could be acquired by said associates.

The answer of appellee denied all fraud, and alleged that Beach, appellee, and Frank V. Kirk, were all qualified to enter and purchase public coal land; that Beach entered the land in question for the benefit of Frank V. Kirk, the purchase money being borrowed by appellee from one L. S. Young, and turned over to her husband Frank V. Kirk; that Beach, at Frank V. Kirk's request, conveyed the land to appellee to be held by her in trust for Kirk as security for the repayment of the purchase money borrowed as aforesaid. The answer also denied that Beach, appellee, or Kirk belonged to an association, the members of which were seeking to acquire more coal land than they were entitled to under the laws of the United States. We have carefully read the evidence which is applicable generally to all the cases now being considered, and find that the statement of facts set forth in the brief of counsel for the United States is a fair statement of what the evidence shows. That statement is as follows:

"In about the year 1890 a number of residents of Boulder, Colo., and their friends, among them being Henry Stevens, Addison F. Orr, Eugene Wilder, Marie Wilder, Samuel S. Eddy, Frank V. Kirk, Lillian Kirk, Jacob Switzer, De Witt C. Bryant, and perhaps others, conceived the idea of acquiring a large tract of public coal lands situate in the vicinity of Pilot Knob Mountain, in Routt county, Colo. For this purpose each of these persons contributed a small amount and had survey made of the lands, so that the same could be designated by legal descriptions. About 4,000 acres of these lands were surveyed and coal declaratory filings in the name of the respective interested persons made on respective quarter sections of said lands. At the end of a year from the date of these initial coal declaratory filings these persons, not being able or willing to purchase the lands from the government, or any tract thereof, in order to continue to control these lands, placed accommodation coal declaratory filings on the lands in the names of friends and acquaintances, who for this purpose signed proper papers and permitted the use of their respective names, the original group of persons paying all the expenses attendant upon the making of this second group of filings. In this manner successive filings were made upon the lands originally filed upon, or a part thereof, from year to year, up to and including the year 1902. During this period certain of the original filers dropped out, while certain other persons became interested in the holding of these lands, and it transpired that in January, 1903, certain of the lands originally filed upon by these original associates were being held under filings controlled by certain of these associates, namely, Stevens, Orr, Wilder, Marie Wilder, Eddy, Frank V. Kirk, Lillian Kirk, and Bryant. During January and February, 1903, Stevens, Orr, Wilder, and Kirk interested one Walter H. Nichols in the deal, explaining to Nichols that Stevens represented a number of persons who had made coal filings on coal lands in Routt county, which were about to expire, and that such persons were desirous of purchasing such lands from the government, but did not have the money with which to pay for the same; that, if Nichols would advance money with which to pay the government for these lands, each of such filers, for whom Stevens was represented to be acting, would give Nichols an undivided one-half interest in each of such tracts of land for which Nichols furnished the money to pay the government. Nichols had several interviews with Stevens, Orr, Wilder, and Kirk, during which this matter was discussed, and during which certain maps were exhibited to Nichols, showing the location of the lands under consideration, which were indicated upon one of such maps as 'Stevens & Company' lands, which group embraces all of the lands here under consideration. Nichols thereupon agreed to furnish the money with which to pay for part of these entries, and did furnish

for that purpose more than $20,000 during March and April, 1903. Furthermore, Nichols interested his cousin, one Henry M. Hubbard, of Chicago, Ill., who advanced for the same purpose $11,200. The funds furnished by Nichols (part of which was by Nichols, secured from Hubbard) to pay for entries under this arrangement were in the form of drafts payable to J. W. Ross, receiver of the United States land office at Glenwood Springs, Colo., in which district the lands are situated. The selection of the particular entries to be paid for with such funds was by Nichols left to Stevens, Wilder, and associates: the only condition being that for every $20 advanced by Nichols to be paid at the land office for coal lands, Nichols was to have one acre of the lands so paid for, the price to be paid to the government being $10 an acre. In this manner, and by means of the funds thus secured, a part of the filings controlled by Stevens and associates were perfected. At the time the money thus furnished by Nichols was used to purchase these lands from the government, it was understood between Nichols and Stevens and associates that Nichols was to have an undivided one-half interest in each of such filings so paid for. After the entries had been made, however, owing to a disagreement between Nichols and Stevens and associates, it was decided that Nichols should be given full title to certain of the lands, instead of an undivided one-half interest in double the amount of the lands. Stevens was in position to make such arrangements concerning, or conveyance of, the lands thus being entered, as he and his associates saw fit, as he had taken the precaution to secure from each of these various accommodation filers a power of attorney constituting Stevens attorney in fact for such filers, with power to convey.

"At the time the money was being forwarded to the local land office to pay for the entry of these lands, certain of the associates, who with Stevens controlled the coal filings under which these so-called 'Stevens & Company' lands were then being held, namely, Frank V. Kirk and De Witt C. Bryant, each contributed $1,600 with which to pay for two of such entries. After the entries were made, the lands entered in the name of W. L. Beach were awarded to Frank V. Kirk, but conveyed to Lillian Kirk at his request, and the lands entered in the name of C. C. Cook were awarded to and conveyed to Bryant, defendant in case No. 4978. Furthermore, $1,588.20 was procured by Stevens from Eugene A. Austin for the purpose of paying for one of these entries, namely, the entry made in the name of F. L. Cheney; an undivided one-half interest in the Cheney entry being conveyed by Stevens, under his power of attorney, each to Eugene A. Austin and Lillian Kirk."

In case No. 4975 now under consideration the evidence further shows that no consideration passed to Beach either from appellee or her husband, Frank V. Kirk, at the time of the execution and delivery of the quitclaim deed or at any other time; that Beach had no interest in the land, and that he made the coal land entry which resulted in the issuance of the patent to him, for Frank V. Kirk. Kirk testified that he borrowed the $1,600, which he paid upon the Beach entry, from L. S. Young or Young's father. Young testifies that Kirk is mistaken when he says that this $1,600 so borrowed was to pay for the Beach entry. Kirk also testified that he took the money down and passed it over into the fund that was being sent down to pay on these entries— took it over to the courthouse, either to Mr. Wilder or Mr. Stevens, he did not remember which. The evidence also shows that not only Beach, but Strawn, Gilbert, and Young each made coal land filings for Frank V. Kirk, and that appellee did not know much about the transaction, having acted throughout in obedience to the requests of her husband; that the $1,600 borrowed by Kirk was not used to pay for the Beach entry any more than any other entry, but went into the general fund raised to pay for the entries made in the interest of the association of persons herein specified; that Kirk had made a coal land

248 F.—3

filing which was not carried to entry and so had appellee prior to the Beach entry.

Case No. 4976 involves coal land entry made April 29, 1903, by Charles S. Lee for 162.15 acres for which a patent issued August 17, 1903. This land was conveyed by the entryman Lee, by Henry Stevens, his attorney in fact, to Walter H. Nichols, in trust for moneys advanced by Nichols under his arrangement with Stevens and associates. Nichols for the purpose of getting his land in one body conveyed the land embraced in the Lee entry to appellees Austin and Lillian Kirk in exchange for lands embraced in what is called the Cheney entry. The lands entered in the name of Cheney had been conveyed by the entryman by Henry Stevens, his attorney in fact, to appellees Austin and Lillian Kirk, the Cheney entry having been purchased with money furnished to Stevens by Austin to pay for one of the numerous entries. The only consideration flowing from Austin and Lillian Kirk for the Cheney entry was the purchase money advanced by Austin to Stevens to pay the government for an entry, and as to Lillian Kirk the interest of Lillian Kirk and her husband, in the group of filings generally. The evidence further shows that Lee signed the filing and entry papers at the request of one C. C. Welch, and never expected to have any interest in the land.

Case No. 4977 involves the coal land entry of H. P. Battey, made May 9, 1903, for 159.07 acres. The entryman conveyed the land to the appellee Eugene Wilder, who it is claimed took and holds the title thereto in trust for the appellees Eddy and Harriet Wilder. Wilder and wife on November 1, 1904, executed a deed of trust on the land to the public trustee of Routt county, Colo., to secure the payment of a promissory note in favor of Mary S. Stoddard for $550. The only consideration flowing from either appellees Wilder, Eddy, or Harriet Wilder being their general interest in the group of filings. Wilder testified that he took and holds the title to the lands for appellees Eddy and Harriet Wilder, but in his ex parte affidavit he stated:

"I still hold the entire interest in this Battey tract, but I hold one-half of it in trust for Mr. S. S. Eddy, who was one of the persons interested in the deal with us, and I hold the other half, for myself, as my part of the land to which I was entitled for securing the filers and assisting in carrying the deal to a successful conclusion."

Case No. 4978 involves coal land entry made November 24, 1903, in the name of C. C. Cook to which patent issued April 8, 1904, for 146.70 acres. By quitclaim deed dated November 27, 1905, the entryman conveyed the land to appellee De Witt C. Bryant. The only consideration flowing from Bryant for this land was his interest in these filings generally and the $1,600 which he furnished Wilder to pay for one of these filings. No consideration whatever is shown to have passed from Bryant to the entryman C. C. Cook. On the contrary, it is shown that Cook was merely an accommodation entryman who received nothing for the land.

[1, 2] The pleadings in Nos. 4976, 4977, and 4978 are substantially the same as above recited in case No. 4975, except that the defense of innocent purchaser is attempted to be set up. The alleged innocent

purchasers in case No. 4976 are appellees Eugene A. Austin and Lillian Kirk, or Frank V. Kirk, for whom it is claimed appellee Lillian Kirk holds title. In case No. 4977, appellee Samuel S. Eddy attempts to set up the defense of innocent purchaser. Mary S. Stoddard also sets up the plea of innocent purchaser for value under the deed of trust from Eugene Wilder and Marie Wilder, his wife, to the public trustee of Routt county, Colo., hereinbefore mentioned. In case No. 4978 appellee Bryant sets up the defense of innocent purchaser. With the exception of appellee Mary S. Stoddard, the evidence does not show the appellees to have been innocent purchasers. The burden of pleading and proving such a defense rested upon appellees. The evidence shows, however, that said appellees were either members of the association hereinbefore described, or that they paid their money, if any, with knowledge of facts which, if investigated, would have led to a knowledge of the fraudulent character of the entries. Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. 637; Northern Colorado Coal Co. v. United States, 234 Fed. 34, 148 C. C. A. 50; United States v. Krueger, 228 Fed. 97, 142 C. C. A. 503; Hill v. United States, 234 Fed. 39, 148 C. C. A. 55. In regard to the plea of Mary S. Stoddard we are of the opinion that she has made her plea good.

[3-5] We further find from the evidence that each coal land entry involved herein was not made in the interest of the entrymen, but, on the contrary, either in the interest of an association of persons who were seeking to obtain from the United States more coal land than they were entitled to, or in the interest of individuals who were seeking to obtain more coal land than they were entitled to. The restrictions in regard to filing upon the public coal lands of the United States as contained in sections 2347, 2348, 2349, 2350, and 2351 of the Revised Statutes of the United States (Comp. St. 1916, §§ 4659-4663), are stated in the case of United States v. Colorado Anthracite Coal Co., 225 U. S. 219, at page 225, 32 Sup. Ct. 617, 619 (56 L. Ed. 1063) as follows:

"These restrictions, as this court has held, forbid individuals and associations from acquiring public coal land in excess of the quantities prescribed, whether directly by entries in their own names or indirectly by entries made for their benefit in the names of others. And so, one person cannot lawfully make an entry in the interest of another who has had the benefit of the law, or in the interest of an association where it or any of its members has had the benefit thereof, or in the interest of a person or an association where he or it has not had such benefit but is seeking, through entries made or to be made by others in his or its interest, to acquire a greater quantity of land than is permitted by the law. U. S. v. Trinidad Coal & Coking Co., 137 U. S. 160 [11 Sup. Ct. 57, 34 L. Ed. 640]; U. S. v. Keitel, 211 U. S. 370 [29 Sup. Ct. 123, 53 L. Ed. 230]; U. S. v. Forrester, 211 U. S. 399 [29 Sup. Ct. 132, 53 L. Ed. 245]; U. S. v. Munday, 222 U. S. 175 [32 Sup. Ct. 53, 56 L. Ed. 149]."

See, also, Wilson Coal Company v. United States et al., 188 Fed. 545, 110 C. C. A. 343.

We are of the opinion that it is not permissible to consider the coal entries herein involved separately and apart from the whole scheme portrayed by the evidence which had in view the acquiring of the public coal lands of the United States in the manner shown. We there-

fore decide that the decrees entered in Nos. 4975, 4976, 4977, and 4978 must be reversed, and the cases remanded, with instructions to enter a decree in each case canceling the patent and other mesne conveyances therein mentioned, except the conveyance made by Eugene Wilder and Marie Wilder to the public trustee of Routt county, Colo., securing the payment of a note for $550 in favor of the appellee Mary S. Stoddard in case No. 4977, which said conveyance is adjudged to be a valid lien to secure the payment of said note; and it is so ordered.