UNITED STATES v. CENTRAL PAC. R. CO. et al.

(Circuit Court, N. D. California. January 11, 1898.)

No. 7,490.

1. PUBLIC LANDS—MINERAL GRANTS.
    A patent granted under Act July 25, 1866 (14 Stat. 239), which excepted mineral lands, is invalid, if at the time of the issue of the patent the land was known to be chiefly valuable for mineral.

2. SAME—CANCELLATION OF PATENT.
    Under Act March 3, 1887 (24 Stat. 556), authorizing suits to cancel patents to lands erroneously certified or patented, and to restore the title thereof to the United States, a patent conveying mineral lands knowingly

purchased as agricultural lands will be canceled as having been errone-
ously made.

3. BONA FIDE PURCHASERS—NOTICE—GOOD FAITH.
    Purchasers of land erroneously patented as agricultural land are not
    bona fide purchasers without notice, when they knew at the time they
    purchased the same that it was mineral land; and purchasers who located
    and worked mineral claims thereon prior to acquiring any interest therein
    are not purchasers in good faith.

This was a bill by the United States against the Central Pacific
Railroad Company, James O. B. Gunn, William E. Brown, W. M.
Bowers, John Gale, A. F. Jones, Henry A. Basford, and Milton E.
Joyce, to cancel a patent issued to the Central Pacific Railroad Com-
pany under a land grant.

W. H. H. Miller, U. S. Atty. Gen. (H. S. Foote, U. S. Atty., and
Samuel Knight, of counsel), for the United States.

Mastick, Belcher & Mastick, for defendants.

MORROW, Circuit Judge.    This is a bill in equity brought by the
United States to cancel and set aside a patent to public lands issued
to the Central Pacific Railroad Company, successor to the California
& Oregon Railroad Company, under the act of July 25, 1866 (14 Stat.
239).    The bill, as amended, alleges that the patent was made to
include section 27 in township 24 N., range 3 E., Mt. Diablo base and
meridian, through mistake and inadvertence on the part of the offi-
cers of the land department.    This section of land is situate in Butte
county, state and Northern district of California; and it is alleged
in the bill, as amended, that for a long number of years before the
selection of said section 27, and prior to the issuance and delivery of
said patent, said section was, and it since has been, and it is now,
well-known mineral land, and that it was at all of said times, and it
is now, valuable chiefly for its mineral, and that during all of said
times it was, and it is now, not valuable for agricultural or timber
purposes, and that during all of said times it was, and it has been,
and it is now, worked successfully as mining ground, and that at all
of said times there were, and there are now, in successful operation,
a number of mines on said land.    The defendants answered the bill
as amended.    The United States introduced testimony in support of
the allegations as to the mineral character of the land.    No evidence
was presented on behalf of the defendants, beyond their sworn an-
swers.

That a bill in equity will lie to correct material mistakes of the
land department in granting patents to public lands, is beyond ques-
tion.    McLaughlin v. U. S., 107 U. S. 526, 2 Sup. Ct. 802; U. S. v.
Minor, 114 U. S. 233, 5 Sup. Ct. 836; Mullan v. U. S., 118 U. S. 271,
6 Sup. Ct. 1011; Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. 457.
Mineral lands were excepted from the grant made by the United
States to the railroad company.    See Act July 25, 1866, §§ 2, 4, 10
(14 Stat. 239).    The question to be determined by the court is whether
the land involved in this controversy was or was not "known mineral
land" prior to the issuance and delivery of the patent therefor.    The
map of definite location of the California & Oregon Railroad opposite

the land in question was filed November 25, 1867, and the land was thereupon withdrawn from sale. The patent was issued March 17, 1875. The testimony shows that section 27 contains mineral lands; that the land is unfit for agricultural purposes, but is valuable chiefly for its mineral; that it was "known mineral land" at and prior to the issuance of the patent; that it was occupied by miners at very early days. Some of the witnesses state that they went on the section as early as 1850 and 1851, and that they mined there at, or shortly after, that time; that mining was carried on subsequent thereto; and that it has been remunerative. It would be useless to review the testimony in detail. It is sufficient to say that it shows clearly and satisfactorily that section 27 contains, and contained "known mineral land" when it was withdrawn from sale, and when the patent was issued. The evidence certainly satisfies the test of what are mineral lands, according to such cases as Deffeback v. Hawke, 115 U. S. 392, 404, 6 Sup. Ct. 95; Davis' Adm'r v. Weibbold, 139 U. S. 507, 519, 11 Sup. Ct. 628; Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 394, 12 Sup. Ct. 543. See, also, for definition clearly stating what constitutes mineral lands, the language of Judge Knowles in Railroad Co. v. Barden, 46 Fed. 610; Id., 154 U. S. 288, 14 Sup. Ct. 1030. The general criterion would seem to be that the land must be more valuable for mineral explorations than for agricultural purposes. There must be sufficient evidence of mineral to justify the expenditure of time and money for its extraction. And it must be so known at the time of the issuance of the patent therefor. Deffeback v. Hawke, supra; Davis' Adm'r v. Weibbold, supra; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796; Barden v. Railroad Co., supra. All these conditions appear to be amply satisfied by the evidence presented. It follows that the patent to the railroad company, in so far as it includes section 27, was issued through mistake and inadvertence on the part of the officers of the land department, and that it is void for want of authority to issue the same. Section 2318 of the Revised Statutes of the United States provides "that in all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law." It being established that the lands in section 27 were valuable chiefly for mineral at the time of the issuance of the patent, the title of the grantee company could not be held valid, because acquired contrary to law. Stoddard v. Chambers, 2 How. 284. If the lands are valuable for mineral, and were knowingly purchased as agricultural lands, the patent issued by the government would convey no title, because issued unadvisedly, or by mistake of an officer of the government while acting ministerially. U. S. v. Stone, 2 Wall. 525. The mistake and inadvertence on the part of the officers of the land department are easily explained. The application by the railroad company for the land under the act of July 25, 1866 (14 Stat. 239), was entirely ex parte. The railroad company applied for the land, as being within its grant, and the officers of the land department considered that the land was subject to the application. But this cannot prejudice the rights of the United States, if the lands were in fact mineral, and were known to be such when the patent was issued.

There was no protest or contest of any kind which was likely to bring to the notice of the officers of the government the fact of the mineral character of the land. The patent having been made to include, erroneously, this section of land, to the railroad company, the United States has a paramount right to have the error or mistake corrected. The act of March 3, 1887 (24 Stat. 556), authorizes suits to cancel patents, or other evidences of title to lands "erroneously certified or patented," and "to restore the title thereof to the United States." This disposes of the case, so far as the grantee company and its trustees are concerned.

With respect to the other defendants, it is further urged that they are bona fide purchasers. It appears from the allegations of the amended bill that these defendants hold contracts with the grantee company and its trustees to purchase from the latter the legal title to certain parts of section 27. The status of a bona fide purchaser is made up of three essential elements: (1) a valuable consideration; (2) absence of notice; and (3) the presence of good faith. 2 Pom. Eq. Jur. § 745; U. S. v. Winona & St. P. R. Co., 15 C. C. A. 96, 67 Fed. 948, 962. I am of the opinion that these defendants had notice, actual or constructive, of the character of the land in section 27 which they contracted to buy from the grantee company and its trustees. They were certainly chargeable with notice of the character of the land, for it had been occupied and known since 1850 as mineral land, and as being unfit for agricultural purposes. It was covered with evidences of mining claims and mining explorations. Notices of location affecting different portions of the section had been filed of record in the mining recorder's office of the Forks of the Butte mining district before the defendants entered into their contract to buy the land from the grantee company and its trustees, which was some time in 1885 and 1886. With respect to the defendants Jones and Gale, it appears further that the element of good faith is entirely wanting; for Jones had, before acquiring any interest in the land he contracted to purchase, owned and worked a claim in the same part of this section, while Gale had, with others, filed a mining location upon the same land which he contracted to buy.

Without entering into a further discussion of the points involved in this case, I am of the opinion, from the evidence, (1) that section 27, township 24 N., range 3 E., Mt. Diablo base and meridian, state of California, contains lands which are valuable chiefly for mineral explorations, and not for agricultural purposes; that this fact was known at and prior to the time when the patent was issued to the grantee company; (2) that the patent, in so far as section 27 is concerned, was issued through mistake and inadvertence on the part of the officers of the land department, and that it is void for want of authority in said officers to issue the same; (3) that the defendants, other than the grantee company and its trustees, are not bona fide purchasers. A decree will therefore be entered in favor of the complainant, the United States, declaring the patent void with respect to section 27, and directing a cancellation of the same; and it is so ordered.