595 F.2d 482
 George C. LADEN, Louis Wedekind, Mrs. Vern Lear, Mrs. Arda
Fritz, and Helen Laden Wagner, Heirs of George H.
Wedekind, Deceased, Plaintiffs/Appellants,
v.
Cecil B. ANDRUS, United States Secretary of the Interior,
Burton W. Silcock, Director of the Bureau of Land
Management, United States Dept. of the Interior, Ed Rowland,
Nevada State Director, Bureau of Land Management, United
States Department of the Interior, Defendants/Appellees.
 No. 77-1638.
 United States Court of Appeals,
Ninth Circuit.
 April 2, 1979.
Rehearing Denied May 11, 1979.
 
 E. A. Hollingsworth (argued) of Echeverria & Osborne, Reno, Nev., for plaintiffs/appellants.
 E. Perra Gezelin, Asst. U. S. Atty., Reno, Nev., Maryann Walsh (argued) of Dept. of Justice, Washington, D. C., for defendants/appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before DUNIWAY and SNEED, Circuit Judges, and KING,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The heirs of George H. Wedekind appeal from a summary judgment entered by the district court upholding an Interior Department decision that appellants were not entitled to a patent covering a section of public land pursuant to Section 321(b) of the Transportation Act of 1940, 49 U.S.C. § 65(b). Three issues are presented on appeal: First, did the district court err by upholding the Department of Interior's (DOI) determination that the land in question was "mineral" in character; second, did the district court err by upholding the DOI's determination that appellants' ancestor was not an "innocent purchaser for value" within the meaning of § 321(b); and third, should the DOI be required to apply the "10 acre rule," 30 U.S.C. § 36, in this case. We note jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 
 2
 The district court based its subject-matter jurisdiction on the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The Supreme Court has since held that Act does not provide an independent basis for federal subject-matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 270 (1977). Nevertheless, the district court had subject-matter jurisdiction under 28 U.S.C. § 1331(a). Andrus v. Charlestone Stone Products Co., 436 U.S. 604, 607 n.6, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978).
 
 I.
 
 3
 FACTUAL BACKGROUND.
 
 
 4
 Appellants in this litigation seek to obtain a patent to lands which their ancestor George H. Wedekind (Wedekind) purchased from the Central Pacific Railroad of California (CPRC) in 1901.[1] The CPRC in 1895 had selected the section of land in which was located the Wedekind tract as part of the property granted to it in aid of railroad construction pursuant to the Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489, 492, and the Act of July 2, 1864, ch. 216, § 4, 13 Stat. 356, 358.[2] CPRC, however, never acquired a patent to the land sold to Wedekind and, subsequent to Wedekind's purchase, the tract was determined to be "mineral land" excluded from CPRC's grant by the terms of the 1862 and 1864 Acts.
 
 
 5
 This determination emerged from proceedings commencing before World War I. Thus, pursuant to a hearing held in 1912, the DOI in 1915 denied CPRC's selection of the section containing the Wedekind tract on the ground that the land was "mineral" in character and, hence, excluded from the grant to CPRC. On appeal from the 1915 decision, CPRC did not contest the DOI's determination that the eastern one-half of the Wedekind tract was "mineral land"; CPRC's selection of that portion of the section was cancelled in 1915. See Appendix to Appellants' Brief at 28, 30, 37. The mineral character of the western one-half of the Wedekind tract was finally established by the DOI in 1916. See Central Pacific Ry., 45 Interior Dec. 25, 27 (1916), Sustained, Central Pacific Ry. v. Lane, 46 App.D.C. 372 (1917).
 
 
 6
 Nothing of significance to this case occurred thereafter until 1962. In that year CPRC's successor in interest, the Southern Pacific Company, filed an application pursuant to Section 321(b) of the Transportation Act of 1940, 49 U.S.C. § 65(b), claiming that patent should issue on behalf of the Wedekind heirs based upon the 1901 conveyance to Wedekind as an "innocent purchaser for value." The Transportation Act of 1940, which was passed to alleviate the economic hardship imposed on railroads by the special rate concessions for government freight required under the railroad grant acts, See Neuhoff v. Secretary of Interior, 578 F.2d 810, 812 (9th Cir. 1978), provides in its section 321(b) that any land grant railroad may charge higher rates for carrying government freight in exchange for its filing a release of any claim it might have against the United States to lands granted to the railroad. It is, however, the savings clause of section 321(b) that is the focal point of this case. That clause states:
 
 
 7
 Nothing in this section shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it, or To prevent the issuance of patents confirming the title to such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value or as preventing the issuance of patents to lands listed or selected by such carrier, which listing or selection has heretofore been fully and finally approved by the Secretary of the Interior to the extent that the issuance of such patents may be authorized by law.
 
 
 8
 (emphasis added).[3] The Southern Pacific Company and its predecessor, CPRC, filed the required releases which specifically excepted lands allegedly sold to innocent purchasers for value.
 
 
 9
 In 1969 the Nevada Land Office of the Bureau of Land Management within the DOI rejected the patent application on behalf of the Wedekind heirs, relying upon the regulation now contained in 43 C.F.R. § 2631.0-8, which states that section 321(b) "is not an enlargement of the (railroad) grants, and does not extend them to lands not already covered thereby and, therefore, has no application to lands which for various reasons, such as mineral character . . . were not subject to the grants." The Land Office noted that the DOI had determined the Wedekind tract to be mineral in character in 1915 and 1916 and that this determination subsequently had been affirmed by the courts, and concluded that appellants did not qualify for a patent under § 321(b). The Office of Appeals and Hearings dismissed an appeal from the Nevada Land Office decision on the ground that the doctrine of res judicata, or its administrative law counterpart, the doctrine of finality of administrative action, prevented further consideration of the appeal by the Southern Pacific Company.[4]
 
 
 10
 In Southern Pacific Co., Louis G. Wedekind, 77 Interior Dec. 177 (1970) the Interior Board of Land Appeals, however, set aside the Land Office decision on the ground that res judicata was inapplicable because the issues involved in determining whether a patent may issue under § 321(b) differ from the issue resolved in 1917, namely the mineral character of the land in 1912. The Board in so holding relied upon its earlier decisions in Southern Pacific Co., 71 Interior Dec. 224 (1964) and United States v. Southern Pacific Co., 77 Interior Dec. 41 (1970). Those authorities held that a patent may issue pursuant to § 321(b) for lands which either (1) were non-mineral at the time of sale by the railroad to an innocent purchaser for value, even though the land subsequently is determined to be mineral in character, or (2) although mineral in character at or prior to the time of sale, were sold to an innocent purchaser for value, I. e., one not chargeable with actual or constructive knowledge of that fact. The Board stated that "(b)efore a decision can be reached in this case, a determination must be made as to the character of the land from the date the railroad line was definitely located to the date of purchase (by Wedekind in 1901) and whether the purchaser from the railroad (Wedekind) was an 'innocent purchaser' for value." 77 Interior Dec. at 179. Accordingly, the Board remanded the case for a hearing to determine (1) "the character of the lands from the time the railroad line was definitely located to and including the time of purchase from the railroad" and (2) "(i)n the event it is determined that the land was mineral in character at any time during such period, evidence should be received relating to the bona fides of the purchaser." Id. at 180-81.
 
 
 11
 On April 23, 1973, appellants filed an action in district court to compel issuance of the patent. In an order denying appellants' motion for summary judgment dated June 20, 1974, and modified on January 15, 1975, the court ordered the DOI to complete final agency action on the patent application prior to June 20, 1975.
 
 
 12
 A hearing, required by the Board's decision in Southern Pacific Co., Louis G. Wedekind, supra, was held before an administrative judge on September 4, 1974. On November 12, 1974, he held that the United States had made a prima facie showing that the Wedekind tract had been mineral in character between the critical dates and that Wedekind had not been a bona fide purchaser for value because he knew or should have known of the land's mineral character. Record at 114. Also he found that appellants had failed to rebut the government's prima facie showing of the land's mineral character. The Interior Board of Land Appeals affirmed these holdings in Southern Pacific Co., Heirs of George H. Wedekind, 20 I.B.L.A. 365 (1975). Appellants then filed a supplemental complaint in district court challenging the DOI's findings and seeking to compel issuance of the patent. After receiving memoranda of law from both parties, the district court concluded that substantial evidence supported the DOI's findings and granted the government's motion for summary judgment affirming the DOI determination. This appeal ensued.
 
 II.
 
 13
 SCOPE OF REVIEW.
 
 
 14
 Our review is limited to determining whether the district court properly applied correct legal principles and whether the district court was correct in using the "substantial evidence" standard in reviewing the DOI holdings. Our affirmance of the district court indicates our approval of the use of the "substantial evidence" standard in reviewing the DOI holdings. See, e. g., Rawls v. United States, 566 F.2d 1373, 1376 (9th Cir. 1978); Multiple Use, Inc. v. Morton, 504 F.2d 448, 452 (9th Cir. 1974). It also indicates our agreement that substantial evidence does support those holdings. Rule 56(c), Fed.R.Civ.P. As to the substantial evidence standard, the propriety of the standard is dictated by 5 U.S.C. § 706(2)(E) inasmuch as the DOI disposition of the appellants' claims constituted an "adjudication" within the meaning of 5 U.S.C. § 554. See Marathon Oil Co. v. Environmental Protection Agency, 564 F.2d 1253, 1261-1264 (9th Cir. 1977). The balance of our opinion is devoted to determining whether correct legal principles were applied by the district court. Essentially this amounts to a determination whether the DOI correctly applied the proper law in denying the appellants their patent.
 
 III.
 
 15
 THE MINERAL CHARACTER OF THE WEDEKIND TRACT.
 
 
 16
 Turning to the first major issue this appeal presents, the appellants assert that the DOI's determination that the Wedekind tract was mineral in character was wrong in three respects. First, appellants claim that the DOI and the district court employed the wrong legal standard for determining whether the land was mineral in character. Second, appellants argue that the DOI and the district court focused on the wrong point in time for determining the land's mineral character. Finally, appellants contend that the evidence does not support the DOI's determination that the land ever was properly classified as being mineral in character. We will consider each assertion in turn.
 
 
 17
 A. Proper Standard for Determining Mineral Character.
 
 
 18
 Appellants contend that land may not properly be classified as mineral land exempt from the operation of the railroad grant unless "the evidence show(s), as a present fact, The existence of a mineral deposit which, without further exploration or examination is known to be of such value as to justify the expenditure of time and money for the purpose of extracting the minerals contained in the deposit." Appellants' Reply Brief at 2 (emphasis added). In so doing, appellants argue that there must exist an actual "discovery" of valuable minerals on land before it may properly be classified as being "mineral" in character, and that the test for determining "mineral land" is more stringent than the test for proving a "discovery." Although it is true that a "discovery" has always been considered a prerequisite to the location of a mining claim under American mining law, "proof of known mineral character is not dependent upon a showing of actual discovery." Standard Oil Co. v. United States, 107 F.2d 402, 414-15 (9th Cir.), Cert. denied, 309 U.S. 654, 673, 60 S.Ct. 469, 715, 84 L.Ed. 1003, 1019 (1940).[5]
 
 
 19
 The test for determining the mineral character of land followed in this Circuit was announced by the Supreme Court in Diamond Coal & Coke Co. v. United States, 233 U.S. 236, 34 S.Ct. 507, 58 L.Ed. 936 (1914):
 
 
 20
 (I)t must appear that The known conditions . . . Were plainly Such as to engender the belief that the land contained mineral deposits of such quality and in such quantity as would render their extraction profitable and justify expenditures to that end.
 
 
 21
 Id. at 239-40, 34 S.Ct. at 509 (emphasis added).
 
 
 22
 There is no fixed rule that lands become valuable . . . only through . . . actual discovery within their boundaries. On the contrary, they may, and often do, become so through adjacent disclosures and other surrounding or external conditions; and when that question arises in cases such as this, any evidence logically relevant to the issue is admissible, due regard being had to the time to which it must relate.
 
 
 23
 Id. at 249, 34 S.Ct. at 512. United States v. Southern Pacific Co., 251 U.S. 1, 40 S.Ct. 47, 64 L.Ed. 97 (1919); Phelps Dodge Corp. v. Arizona, 548 F.2d 1383, 1388 (9th Cir.), Cert. denied, 434 U.S. 859, 98 S.Ct. 184, 54 L.Ed.2d 132 (1977), Aff'g, 390 F.Supp. 150, 153 (D.Ariz.1975); Standard Oil Co. v. United States, 107 F.2d 402, 414-15 (9th Cir.), Cert. denied, 309 U.S. 654, 673, 60 S.Ct. 469, 715, 84 L.Ed. 1003, 1019 (1940). We hold that the DOI and the district court properly articulated and applied the Diamond Coal & Coke test for determining the mineral character of the Wedekind tract.[6]
 
 
 24
 B. Proper Time for Ascertaining Mineral Character.
 
 
 25
 Appellants contend that when an application for patent is made under Section 321(b) of the Transportation Act of 1940, the land's mineral character must be determined as of the date of the patent application (1962), rather than at the time of the purchase from the railroad (1901). Appellants rely, Inter alia, on Barden v. Northern Pacific Ry., 154 U.S. 288, 14 S.Ct. 1030, 38 L.Ed. 992 (1894). Their reliance is misplaced. Barden held that land determined to be mineral in character Any time prior to the issuance of a patent is excluded from the operation of the railroad land grants; it did not hold that the relevant time for determining the land's mineral character is the time of the patent application. Barden reinforced the perceived congressional intent to minimize the risk that mineral land might be patented to a land grant railroad, by maximizing the time period during which a mineral land disqualification could occur.
 
 
 26
 As already indicated, appellants can derive no comfort from the 1912-1917 proceedings. Appellants' only claim to a patent is via section 321(b), which preserves whatever rights innocent purchasers have to obtain a patent under the authority of 43 U.S.C. § 898. See note 3 Supra. The Interior Department has interpreted § 321(b) to require an inquiry into the mineral character and bona fides of the purchaser existing At the time of the purchase from the railroad. See United States v. Southern Pacific Co., 77 Interior Dec. 41 (1970); Southern Pacific Co., 71 Interior Dec. 224 (1964). We hold that the DOI's interpretation is correct. The district court explained the point in a manner of which we approve:
 
 
 27
 The savings clause of section 65(b) (§ 321(b)) . . ., preserves the rights of "an innocent purchaser for value" from the railroad prior to issuance of the patent. This enabling act permitted the present patent application to be filed some sixty years after the original sale to Wedekind, and almost fifty years after the Central Pacific Railway Company's selection of section 29, T. 20 N. R. 20 E. had been judicially determined to be invalid because the land was found to be mineral in character. . . . The only viable issues presented in the 1962 patent application were those authorized by the Transportation Act of 1940, that is, was the land in fact non-mineral in character in 1901, and was Wedekind in fact an innocent purchaser. There is no conceivable way that the factual determination of these issues can be transposed to 1962 and the geologic, economic and social conditions known to exist in 1962. Under the plain language of the Transportation Act of 1940, the facts must have been determined as of 1901.
 
 
 28
 Record at 240-41.
 
 
 29
 C. Evidentiary Support for the "Mineral Characterization."
 
 
 30
 Finally, appellants argue that, conceding that Diamond Coal & Coke states the applicable test for determining the land's mineral character and that the relevant inquiry focuses on the conditions existing on or before 1901, the determination that the Wedekind tract was mineral in character is not supported by substantial evidence. Appellants place great reliance on evidence in the record establishing that the Wedekind tract presently is non-mineral in character and that the surface geology of the area has remained substantially unchanged since 1901. What never was cannot have been insist the appellants. They miss the point, however. What never was could have been thought to be. What it was thought to be is the crucial issue.
 
 
 31
 The proper inquiry, thus, is not whether the Wedekind tract now contains, or ever did contain, a valuable mineral deposit. To paraphrase Diamond Coal & Coke, the relevant issue is whether the known conditions existing in 1901 were sufficient to engender the belief that the Wedekind tract contained minerals of a quantity and quality that would render their extraction profitable and justify expenditures to that end. Briefly summarized, the evidence supporting the DOI's finding that the conditions in 1901 were sufficient to engender such beliefs includes: (1) the Wedekind tract is located in the heart of the so-called Wedekind mining district, which bears the name of appellants' ancestor who, in 1896-97, located the first mining claim in the area on two sections of land adjacent to the Wedekind tract; this claim later yielded a producing mine; (2) an expert mining geologist and engineer testified that the areas which were most favorable for mineralization from a geological standpoint fully cover the Wedekind tract, as well as adjacent lands from which actual production was recorded; (3) extensive mine workings existed in 1901 on sections adjacent to the southeast corner of the Wedekind tract; (4) Wedekind and other family members located, bought, and sold mining claims covering portions of the Wedekind tract during the period between 1900-1901; (5) Wedekind located yet another mining claim extending into the Wedekind tract two months after he purchased the land from the CPRC; four months after his purchase, Wedekind sold his producing mine on the adjacent property along with the various mining claims which he had located that covered portions of the Wedekind tract; and (6) miners and prospectors other than the Wedekind family located and/or purchased mining claims on the Wedekind tract during the period between 1900-1902. This is enough to require that we hold that substantial evidence supports the DOI's determination.
 
 IV.
 
 32
 THE MEANING OF "INNOCENT PURCHASER FOR VALUE."
 
 
 33
 Appellants next argue that the DOI and the district court erred by equating the term "innocent purchaser for value," in § 321(b) with the term "bona fide purchaser," in 43 U.S.C. § 898, and that the term "innocent purchaser for value" merely means a subjectively honest purchaser participating in a sale that is genuine, rather than a sham. We disagree. The DOI and the district court did not err by relying upon precedent dealing with the meaning of the term "bona fide purchaser" in 43 U.S.C. § 898 to interpret the term "innocent purchaser for value" in § 321(b). Nor was there error in concluding that appellants failed to establish that Wedekind qualified as an innocent purchaser for value.
 
 
 34
 The DOI has used the terms "innocent purchaser for value" and "bona fide purchaser" interchangeably when dealing with the rights of purchasers from railroads who seek patents to lands disqualified from the railroad's grant. See United States v. Southern Pacific Co., 77 Interior Dec. 41, 44 (1970); Southern Pacific Co., Louis G. Wedekind, 77 Interior Dec. 177, 180 (1970). This is not improper. The DOI correctly noted in this case that
 
 
 35
 (g)enerally for a purchaser not to be bona fide the facts must show that he knew or should have known that the lands were mineral in character as of the date of his purchase or were of such character so as to have been excluded when the railroad line was definitely located or at any time prior to his purchase. . . . As was said in United States v. Central Pacific Railroad Co., 84 Fed. 218, 221 (Cir. Ct., N.D.Cal.1898):
 
 
 36
 * * * The status of a bona fide purchaser is made up of three essential elements: (1) a valuable consideration; (2) the absence of notice; and (3) the presence of good faith.
 
 
 37
 77 Interior Dec. at 180. The district court affirmed the DOI's conclusion that Wedekind failed to qualify as an innocent purchaser for value because his purchase was not made in good faith. In so doing, the district court cited and relied upon United States v. Central Pacific Ry., 84 F. 218, 221 (Cir. Ct., N.D.Cal.1898) where the court, in determining the good faith of purchasers from a railroad grantee, stated that the
 
 
 38
 defendants had notice, actual or constructive, of the character of the land . . . which they contracted to buy . . . . It was covered with evidences of mining claims and mining explorations. Notices of location affecting different portions of the section had been filed of record in the mining recorder's office . . . before the defendants entered into their contract to buy the land . . . . (I)t appears further that the element of good faith is entirely wanting . . . for (one of the defendants) . . . had, before acquiring any interest in the land he contracted to purchase, owned and worked a claim in the same part of this section, while (another defendant) . . . had, with others, filed a mining location upon the same land which he contracted to buy.
 
 
 39
 We agree with the district court that substantial evidence supports the DOI's conclusion that Wedekind's lack of good faith kept him from qualifying as an "innocent purchaser for value" within the meaning of § 321(b). Wedekind purchased the land at the height of the area's mineral development, was conscious of the property's mineral character, and capitalized on the contemporary demand for mineral land by locating and later selling mining claims along with an adjacent mine.
 
 V.
 
 40
 APPLICABILITY OF THE "10 ACRE RULE."
 
 
 41
 Appellants, finally, contend that the DOI should be required to apply the "10 acre rule," 30 U.S.C. § 36 in this case and identify specifically each ten acre portion of the Wedekind tract that is ineligible for patenting due to its mineral character. The 10 acre rule requires a person seeking to locate a placer mining claim to show the mineral character of each ten acre tract within the area claimed. See, e. g., United States v. Meyers,17 I.B.L.A. 313 (1974). Under this rule, a mineral discovery on one ten acre portion of a placer claim does not operate to establish the mineral character of the entire claim. See 1 American Law of Mining § 4.92 (Rocky Mountain Mineral Law Foundation ed. 1978). Section 36 is, by its terms, however, applicable only to persons seeking to locate a placer mining claim. It does not impose a duty on the DOI to identify separate ten acre tracts that are unpatentable due to their mineral character. Appellants have not referred us to any authority suggesting that the 10 acre rule can be so used in this situation, I. e., when a purchaser seeks a patent pursuant to § 321(b) on the ground that the land purchased was non-mineral in character.[7] We decline to require such use in this case.
 
 
 42
 Accordingly, because we find that the DOI and the district court applied the proper legal standards, and because we agree that the DOI's findings are supported by substantial evidence, we affirm the decision of the district court.
 
 
 43
 AFFIRMED.
 
 
 
 *
 Hon. Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Wedekind purchased the southeast quarter of the section of land more fully described in note 2 Infra
 
 
 [2]
 CPRC selected, Inter alia, Section 29, Township 20 North, Range 20 East, Mount Diablo Meridian, in what now is Washoe County, Nevada
 
 
 [3]
 Section 321(b) preserves, rather than creates, existing authority to issue a patent to a purchaser of land from a railroad
 We think it clear that Congress intended by the saving clause merely to assure the survival, despite the filing of a release pursuant to the statute, among other things, of any theretofore existing authority in the Secretary to issue patents confirming the title to such lands as he shall find have been sold by a carrier to an innocent purchaser for value. The language of the clause in this respect permits no other meaning. "Nothing in this section," says the clause is "to prevent the issuance" of such a patent. The words obviously did not create a duty on the part of the Secretary to issue a patent, or a right in the carriers to receive one, if, this statute apart, neither the duty nor the right existed.
 Atlantic & Pacific Ry., 58 Interior Dec. 577, 581-82 (1944). See 43 C.F.R. § 2631.0-8. The only existing authority to issue patents to innocent purchasers of mineral land from railroads appears in § 5 of the Act of March 3, 1887, 43 U.S.C. § 898, and is preserved by § 321(b) of the Transportation Act of 1940. See Southern Pacific Transportation Co. v. United States Forest Service, 35 I.B.L.A. 270, 272-74 (1978); Southern Pacific Transportation Co., 32 I.B.L.A. 218, 223 (1977) (Thompson, ALJ concurring); Southern Pacific Co., Heirs of George H. Wedekind, 20 I.B.L.A. 365, 377 (1975) (Thompson, ALJ, concurring).
 
 
 [4]
 The decision of the Office of Appeals and Hearings states:
 In the present application, the Southern Pacific Company has presented the same issue as that decided in the case cited above (Central Pacific Ry. v. Lane, 46 App.D.C. 372 (1917)). It therefore is determined to be res judicata and a bar to any further claim for relief, and it is not proper again to consider on its merits an appeal on the same issue and for the same land.
 quoted in Southern Pacific Co., Louis G. Wedekind, 77 Interior Dec. 177, 179 (1970).
 
 
 [5]
 (I)t appears that while the showing of mineral required to establish a discovery has increased during the years, the showing necessary to establish the mineral character of the land has diminished. At first, a greater showing was required to establish the mineral character of land than was required to establish a discovery. At present the opposite is true. The reason for the divergent trends in the two concepts is not difficult to discern. Discovery is the basis upon which title to public lands may pass from the United States to private persons under the mining laws. A determination that no discovery has been made prevents the lands from passing into private ownership. On the other hand, title to lands mineral in character cannot pass from the United States to private persons under the nonmineral land laws. A determination that the lands are mineral in character prevents the lands from passing into private ownership
 
 
 [1]
 American Law of Mining § 4.50, at 657 (Rocky Mountain Mineral Law Foundation ed. 1978). In Diamond Coal & Coke Co. v. United States, 233 U.S. 236, 34 S.Ct. 507, 58 L.Ed. 936 (1914) the Supreme Court rejected the notion that a "discovery" need be proven to establish the mineral character of certain lands during the 1899-1901 period the relevant time period in this case. See Part III B. Infra. We therefore reject appellants' contention that the proof required to establish the mineral character of land in 1901 was more stringent than the proof required to establish a "discovery."
 
 
 [6]
 Appellants complain that the Interior Board applied the wrong test for determining mineral character, noting the Board's citation in Southern Pacific Co., Heirs of George H. Wedekind, 20 I.B.L.A. 365, 374-76 (1975) to its own decision in Central Pacific Ry., 43 Interior Dec. 545, 547 (1914), which stated that "if any evidence of mineral is found upon the land and the showing is sufficient, in the opinion of prudent and qualified persons, to warrant further exploration and expenditure, with reasonable prospect of success, the land cannot be classified as nonmineral." Appellants argue that such a formulation misstates the applicable law by focusing the inquiry on evidence sufficient to engender a belief that further exploration, rather than extraction, is warranted. Without expressing any opinion as to the applicability of the test recited in Central Pacific Ry., supra, we note that the Board followed this citation with a citation and discussion of Diamond Coal & Coke Co., supra, and United States v. Southern Pacific Co., supra, and that the entire discussion of the applicable law in the Board decision indicates that the Board embraced the proper standard. Both the administrative judge and the district court also cited and applied the proper standard. It therefore appears that the DOI and the district court articulated and applied the proper standard for determining the mineral character of the land
 
 
 [7]
 Appellants' citation to a letter describing a situation in which a railroad's grant was reduced in ten acre increments is inapposite. See Appendix to Appellants' Brief at 22-24. The letter from the General Land Office referred to by appellants pertains to a contest between a mineral claimant and a railroad seeking patent to land under a railroad grant. In that situation, the railroad's selection of grant land was reduced vis-a-vis a placer mining claimant, in ten acre increments. This case does not involve limits on land patentable to a placer mining claimant; instead it involves the mineral characterization of lands which appellants seek to patent pursuant to § 321(b)